Per Curiam.
 

 Defendant appeals as of right from his jury trial conviction of malicious destruction of personal property valued in excess of $100, MCL 750.377a; MSA 28.609(1). The trial court sentenced defendant as an habitual offender, fourth offense, MCL 769.12; MSA 28.1084, to three to ten years’ imprisonment. We affirm.
 

 
 *456
 
 The complainant, Norman Pieper, testified that during the afternoon of January 22, 1997, he was driving his Buick Riviera south on Ashman Street in Midland. At the intersection of Ashman and Indian Street, Pieper stopped for a red light. Pieper was in the center lane. As he waited for the light to change, Pieper saw a pedestrian, whom he identified as defendant, heading west on Indian. As defendant approached the comer, the light turned green for Ash-man traffic, but defendant still proceeded into the intersection. Pieper testified that defendant had his head down and did not look at the light before entering the intersection. Pieper moved forward approximately a foot, then halted when he realized that defendant was not stopping. Pieper stated that his car never made contact with defendant. As defendant moved in front of Pieper’s car, Pieper, concerned that the car in the next lane might not stop, “tooted the hom to get his attention.” Defendant then stopped, looked at Pieper, walked to the passenger side of Pieper’s vehicle, and, using his right elbow, struck the window “with considerable force.” The window shattered, and Pieper sustained a cut on his right hand.
 

 John Ramey testified that he had been traveling west on Indian and had stopped for a red light. He noticed defendant, walking with his head down, step off the curb to cross Ashman. Defendant did not look at the fight. When defendant passed in front of a Buick Riviera in the center lane, the driver sounded his hom. At the time, the distance between defendant and the Riviera was approximately four or five feet. Defendant walked over to the car and smashed its window out. Defendant then continued to walk down Indian. Ramey used his cellular telephone to call 911.
 

 
 *457
 
 Jean Watt testified that she had been in the right lane on Ashman, about three cars from the intersection. She saw defendant step into the intersection without looking up at the light. When the light turned green, the two cars in front of her turned right, but Watt pulled forward slowly because she realized that defendant was not stopping. Watt testified that defendant was in front of her vehicle when he suddenly turned, stepped forward, and used his elbow to smash the window of the car in the middle lane. Watt stated that as he turned toward the car, defendant “was extremely upset; he was enraged.”
 

 Ray Stanley testified that he was employed at Linwood Glass, where he replaced auto glass. In January 1997, Stanley replaced the glass on the passenger door of a Buick Riviera. Linwood Glass charged $227.77 to repair the vehicle. Stanley testified that the glass used in the Riviera was tempered glass, which is stronger than regular glass. Stanley explained that a car window made of tempered glass could not be broken with minor force: “[y]ou would have to really hit it hard.”
 

 Defendant testified that he was walking west on Indian at the time in question. He indicated that the street was very wet because of melting snow and that his boots were full of slush. As defendant approached the intersection of Ashman and Indian, the light for Ashman turned yellow, and he proceeded to walk because the cars were already stopping. As defendant moved in front of the third lane, he heard a loud horn and screeching tires and thought that he was going to get hit by an oncoming truck. He found himself unable to move forward because his feet were partially immobilized by the cold and the slush in his boots, so
 
 *458
 
 he lunged backward, slipped, and fell into the path of a white Buick. Defendant claimed that the Buick’s mirror hit his side and spun him around. Defendant stood there, slightly disoriented. He looked at the driver of the Buick, who “flipped him off.” Defendant admitted that he broke Pieper’s window but claimed that he had not intended to do so and flatly denied that he walked up to the car and smashed the window with his elbow. Defendant was not acquainted with Pieper, Ramey, or Watt and could not say why they had testified as they had.
 

 After defendant testified on direct examination, the prosecutor moved to admit evidence of four 1991 convictions, namely, larceny in a building, MCL 750.360; MSA 28.592, breaking and entering a motor vehicle with the intent to steal property valued over $5, MCL 750.356a; MSA 28.588(1), unlawfully driving away an automobile, MCL 750.413; MSA 28.645, and larceny from a motor vehicle, MCL 750.356a; MSA 28.588(1). Over defendant’s objection,
 
 [1]
 
 the trial court allowed the prosecutor to impeach defendant with evidence of the convictions of larceny in a building and larceny from a motor vehicle.
 

 The jury deliberated for twenty minutes before finding defendant guilty of malicious destruction of personal property valued in excess of $100. The trial court sentenced defendant as an habitual offender, fourth offense, to three to ten years’ imprisonment. Defendant appeals as of right.
 

 
 *459
 
 i
 

 Defendant argues that there was insufficient evidence that he intended to break the window of the car in question. When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt.
 
 People v Wolfe,
 
 440 Mich 508, 515; 489 NW2d 748 (1992). Circumstantial evidence and reasonable inferences arising therefrom may be sufficient to prove the elements of a crime.
 
 People v McKenzie,
 
 206 Mich App 425, 428; 522 NW2d 661 (1994) .
 

 To be convicted of malicious destruction of property, a defendant must have intended to injure or destroy the property in question.
 
 People v Culp,
 
 108 Mich App 452, 458; 310 NW2d 421 (1981). Intent may be inferred from all the facts and circumstances.
 
 People v Lugo,
 
 214 Mich App 699, 709; 542 NW2d 921 (1995) . Here, Pieper testified that after he honked his horn, defendant stopped in the middle of the intersection, looked at him, walked to the side of the car, and hit the car window hard enough to shatter the glass. Ramey and Watt corroborated Pieper’s account of the incident. Watt testified that defendant was “extremely upset” and “enraged.” Finally, Stanley testified that the car window had been made of tempered glass, which would have required “a real hard hit to break it”—falling on the window or pushing against it would not have been sufficient. This evidence was sufficient for a rational trier of fact to conclude that defendant
 
 *460
 
 intentionally damaged the passenger window of the car. See
 
 Wolfe, supra.
 

 n
 

 Next, defendant argues that the trial court erred in allowing the prosecutor to impeach defendant with evidence of two prior convictions. We review a trial court’s decision to admit evidence for an abuse of discretion.
 
 Lugo, supra.
 
 This Court will find an abuse of discretion only when an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made.
 
 Id.
 

 A witness’ credibility may be impeached with evidence of prior convictions, MCL 600.2159; MSA 27A.2159, but only if the criteria set forth in MRE 609 are satisfied. MRE 609 provides in pertinent part:
 

 (a) General rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross examination, and
 

 (1) the crime contained an element of dishonesty or false statement, or
 

 (2) the crime contained an element of theft, and
 

 (A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and
 

 (B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs the prejudicial effect.
 

 (b) Determining probative value and prejudicial effect. For purposes of the probative value determination required by subrule (a)(2)(B), the court shall consider only the age
 
 *461
 
 of the conviction and the degree to which a conviction of the crime is indicative of veracity. If a determination of prejudicial effect is required, the court shall consider only the conviction’s similarity to the charged offense and the possible effects on the decisional process if admitting the evidence causes the defendant to elect not to testify. The court must articulate, on the record, the analysis of each factor.
 

 Relying on
 
 People v Ash,
 
 128 Mich App 265; 340 NW2d 646 (1983), defendant maintains that he was denied a fair trial because he had already testified at the time the prosecutor sought to introduce his prior convictions. In
 
 Ash,
 
 as in the present case, the prosecution did not move for admission of evidence of the defendant’s prior conviction until after defense counsel had completed his direct examination of the defendant. The
 
 Ash
 
 Court held that the trial court erred in considering the issue at that point because the defendant was entitled to know before he took the stand whether evidence of his prior record would be used for impeachment. The
 
 Ash
 
 Court further stated that the prosecutor has the responsibility of ensuring that the trial court rules with regard to the admissibility of a defendant’s prior convictions before he takes the stand.
 
 Id.
 
 at 268-269.
 

 A subsequent panel of this Court, however, criticized the broad rule set forth in
 
 Ash
 
 in
 
 People v Hubbard,
 
 159 Mich App 321, 324-326; 406 NW2d 287 (1987), and
 
 People v Wilson,
 
 159 Mich App 345, 349-351; 406 NW2d 294 (1987). First, the
 
 Hubbard/Wilson
 
 panel noted that Ash's holding that a defendant is entitled to know before taking the stand whether evidence of a prior conviction will be used for impeachment adds a procedural requirement not contained in MRE 609. In addition, the
 
 Hubbard/Wilson
 
 panel con-
 
 *462
 
 eluded that the
 
 Ash
 
 court’s reliance on
 
 People v Lytal,
 
 415 Mich 603; 329 NW2d 738 (1982), was misplaced.
 
 Ash
 
 cited
 
 Lytal
 
 for the proposition that it is the prosecutor’s responsibility to insist on a ruling regarding the use of the defendant’s prior convictions before the defendant takes the stand. However, in
 
 Lytal,
 
 the Supreme Court held only that the trial court could not reserve its ruling regarding the admissibility of the evidence of prior convictions until after the defendant testified.
 
 [2]
 
 See
 
 id.
 
 at 609-610. The
 
 Lytal
 
 Court did not address the situation presented in
 
 Ash
 
 and the present case.
 

 While it rejected the
 
 Ash
 
 panel’s reasoning, the
 
 Hubbard/Wilson
 
 panel distinguished those cases from
 
 Ash
 
 on the basis that the respective defendants knew before they testified that the prosecutor intended to use the evidence of their prior convictions for impeachment purposes. See
 
 Wilson, supra
 
 at 350;
 
 Hubbard, supra
 
 at 324. In
 
 People v Thomason,
 
 173 Mich App 812, 816-817; 434 NW2d 456 (1988), a different panel of this Court confronted a factual situation similar to that of
 
 Ash.
 
 The
 
 Thomason
 
 Court, citing
 
 Hubbard
 
 and
 
 Wilson,
 
 rejected the
 
 Ash
 
 holding entirely.
 

 
 *463
 
 Like the
 
 Thomason
 
 Court, we decline to follow
 
 Ash
 
 for the reasons discussed in
 
 Hubbard
 
 and
 
 Wilson.
 
 Accordingly, we hold that the burden is not on the prosecutor in all cases to initiate a trial court’s ruling with regard to whether a defendant’s prior convictions may be used for impeachment purposes. Under the facts of the present case, we conclude that defendant was not denied a fair trial because the prosecutor did not move to introduce evidence of defendant’s prior convictions until after defendant had testified on direct examination. Cf.
 
 Thomason, supra.
 

 We now turn to the question whether the trial court abused its discretion in allowing the prosecutor to impeach defendant with evidence of his prior convictions of larceny in a building and larceny from a motor vehicle. Defendant contends that the evidence of the prior convictions was minimally probative because the convictions were six years old and were for theft crimes. The trial court noted that the larceny convictions were for theft crimes, that their age lessened their probative value, and that allowing impeachment with felony convictions always has some prejudicial effect. Nevertheless, the court concluded that the probative value of the evidence outweighed the prejudicial effect. The trial court instructed the jury regarding the proper use of the evidence at the time of impeachment and again during final instructions. Defendant has not shown that the trial court abused its discretion. See
 
 Lugo, supra.
 

 Even if the trial court had erred in admitting evidence of defendant’s prior convictions, we would not find that reversal of defendant’s conviction was warranted. Given the testimony of three independent eye
 
 *464
 
 witnesses that defendant smashed the window of Pieper’s car, it is highly probable that the admission of evidence of defendant’s prior convictions did not contribute to the verdict. See
 
 People v Gearns,
 
 457 Mich 170, 205 (Brickley, J.), 207 (Cavanagh, J.); 577 NW2d 422 (1998).
 

 m
 

 Finally, defendant argues that the sentence imposed by the trial court is disproportionate. A trial court’s imposition of a particular sentence is reviewed on appeal for an abuse of discretion, which will be found where the sentence imposed does not reasonably reflect the seriousness of the circumstances surrounding the offense and the offender.
 
 People v Milbourn,
 
 435 Mich 630, 636; 461 NW2d 1 (1990);
 
 People v Castillo,
 
 230 Mich App 442, 447; 584 NW2d 606 (1998).
 

 The trial court based its sentence on defendant’s extensive criminal record and its belief that the incarceration of defendant was necessary for the protection of society. A trial court does not abuse its discretion in giving a sentence within the statutory limits established by the Legislature when an habitual offender’s underlying felony, in the context of his previous felonies, evidences that the defendant has an inability to conform his conduct to the laws of society.
 
 People v Hansford (After Remand),
 
 454 Mich 320, 326; 562 NW2d 460 (1997). Defendant’s sentence is proportionate to the seriousness of the circumstances surrounding the offense and the offender, and the trial court therefore did not abuse its discretion in sentencing defendant. See
 
 Milbourn, supra.
 

 Affirmed.
 

 [1]
 

 Defense counsel conceded that there had been no official agreement that evidence of defendant’s prior convictions would not be used for impeachment. The prosecutor recalled that he had discussed the subject with defense counsel before trial, but he had been left with the impression that it was unlikely that defendant would testify.
 

 [2]
 

 In
 
 Lytal,
 
 the Supreme Court did state that “[t]he defendant is entitled to know before he takes the stand whether, if he does so, the prior record can be used for impeachment.”
 
 Lytal, supra
 
 at 609. However, in support of that statement, the Court cited
 
 People v Hayes,
 
 410 Mich 422; 301 NW2d 828 (1981). In
 
 Hayes,
 
 the Supreme Court held that the trial court’s ruling, which conditioned the exclusion of evidence of the defendant’s prior conviction on the defendant’s forgoing impeachment of the prosecution witnesses, constituted an impermissible failure to exercise judicial discretion. See
 
 id.
 
 at 426-427. We agree with the
 
 Hubbard/Wilson
 
 panel that the Supreme Court’s language in
 
 Lytal
 
 should be read in context with its holding in
 
 Hayes.
 
 See
 
 Hubbard, supra
 
 at 325;
 
 Wilson, supra
 
 at 350-351.