604 N.W.2d 737 (1999)
PEOPLE of the State of Michigan, Plaintiff-Appellee,
v.
Derrick WHITEHEAD, a/k/a Darrick J. Walls, Defendant-Appellant.
Docket No. 203626.
Court of Appeals of Michigan.
Submitted June 17, 1999, at Detroit.
Decided October 8, 1999, at 9:00 a.m.
Released for Publication January 25, 2000.
*739 Jennifer M. Granholm, Attorney General, Thomas L. Casey, Solicitor General, John D. O'Hair, Prosecuting Attorney, Timothy A. Baughman, Chief of Research, Training, and Appeals, and Brian T. Moody, Assistant Prosecuting Attorney, for the people.
State Appellate Defender (by P.E. Bennett), for the defendant on appeal.
Before: BANDSTRA, C.J., and WHITBECK and TALBOT, JJ.
*738 BANDSTRA, C.J.

Introduction
In Riverside County v. McLaughlin, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), the United States Supreme Court held that, following an arrest without a warrant, "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, [be found to] comply with the promptness requirement" of the federal constitution's Fourth Amendment. Police authorities who hold an arrestee for more than forty-eight hours without an arraignment can constitutionally do so only if they can "demonstrate the existence of a bona fide emergency or other extraordinary circumstance" that would justify the delay. Id. at 57, 111 S.Ct. 1661. While the majority in Riverside stated "[e]veryone agrees that the police should make every attempt to minimize the time a presumptively innocent individual spends in jail," id. at 58, 111 S.Ct. 1661 Justice Scalia would have gone farther than the majority by considering twenty-four hours to be the time limit presumed as constitutional, id. at 70, 111 S.Ct. 1661 (Scalia, J., dissenting).
Riverside was applied by a panel of this Court in People v. McCray, 210 Mich.App. 9, 533 N.W.2d 359 (1995). The case was *740 remanded to the trial court for a determination whether the police could justify holding the defendant for more than forty-eight hours. The panel noted that "[t]he facts suggest that the police were motivated by a desire to gain additional information to justify the arrest and may have intentionally delayed arraigning McCray in hopes of eliciting an incriminating statement." McCray, supra at 12, 533 N.W.2d 359. McCray was decided on April 21, 1995.
Less than eight months later, defendant in the present case was arrested by the Detroit Police Department on December 16, 1995. Again,[1] as in McCray, the Detroit police held defendant without a judicial determination of probable cause justifying his arrest for a period far in excess of forty-eight hours. Again, the circumstances of this case indicate that defendant may have been detained for the purpose of securing his confession regarding the crimes at issue. In any event, defendant did make a statement on December 20, nearly four full days after his arrest, regarding his involvement in the crimes.
We today conclude that any error resulting from the use of defendant's confession at trial was harmless. Nonetheless, we publish this case to reiterate the importance of the constitutional principles reviewed in Riverside. We emphasize to police authorities across Michigan the importance of securing a judicial determination of probable cause within forty-eight hours of an arrest without a warrant in all but the most extraordinary situations. Finally, this decision provides a warning that statements made by an accused person during a longer detainment may well be found inadmissible for purposes of securing a conviction at trial.

Facts
Following a jury trial, defendant was found guilty as charged of three counts of assault with intent to rob while armed, M.C.L. § 750.89; MSA 28.284, and one count of possession of a firearm during the commission of a felony, M.C.L. § 750.227b; MSA 28.424(2). Defendant was sentenced to concurrent terms of eight to twenty years' imprisonment for the convictions of assault with intent to rob while armed and a consecutive two-year sentence for the felony-firearm conviction. Defendant appeals his convictions as of right.
This case began with a shooting at a record store that was open late on the evening of December 16, 1995. The proprietors of the store and their son testified that three men came into the store brandishing firearms and that one of the men shot the son at close range. After hearing the gunshots, a witness on the street observed three men enter a car and drive away. The witness immediately called the police using a cellular phone, and a chase ensued. Defendant was found hiding under a car and was brought to the police station. Almost four days later, after being repeatedly questioned by various police officers, defendant signed a statement admitting that he was one of the men who entered the store and committed the assaults.
Before trial, defendant requested and was granted a Walker[2] hearing where he challenged the admissibility of his statement, contending that it was not voluntarily made. The trial court considered the largely contradictory testimony of defendant and the police witnesses and, concluding that defendant's account was less credible, determined that the confession was voluntary. Accordingly, evidence regarding *741 defendant's statement was used against him at trial.
On appeal, defendant argues that his statement should not have been admitted not only because it was involuntary but also because it was elicited in violation of his Miranda[3] rights and during a detainment that was excessively long under Riverside. Defendant also argues that there was insufficient evidence to establish the corpus delicti of the charges, particularly the intent to rob.

Analysis
We first consider defendant's argument that, for a number of reasons, his statement to the police should have been suppressed and that, because it was used against him, he should be granted a new trial. In other words, defendant argues that admitting the statement was error and also that the error was not harmless. To accept this argument and grant defendant a new trial, we would have to conclude that both of these contentions have merit.
"Judicial expediency allows courts to address issues according to their ease of resolution." People v. Graves, 458 Mich. 476, 479-480, n. 2, 581 N.W.2d 229 (1998). Of the two questions presented by defendant's argumentwhether the statement should have been suppressed and, if so, whether admission of the statement was harmless errorwe find the second to be easier to resolve.[4] Accordingly, assuming without deciding that it was error for the trial court to allow the confession to be used against defendant at trial, we consider whether that constituted harmless error. If any error that might have occurred was harmless, we need not consider whether, in fact, there was error in admitting the confession.
Defendant argues that his confession was admitted at trial in contravention of constitutional rights under People v. Walker (On Rehearing), 374 Mich. 331, 132 N.W.2d 87 (1965) (involuntary confession), Riverside, supra (excessive detainment), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (privilege against self-incrimination). We must first determine whether the alleged error in admitting the confession is structural or nonstructural. Graves, supra at 482, 581 N.W.2d 229.
First, a court must ask if the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by `harmless-error' standards." These errors include the total deprivation of the right to trial counsel, an impartial judge, excluding grand jury members who are the same race as defendant, denial of the right to self-representation, denial of the right to a public trial, and a constitutionally improper reasonable doubt instruction....
At the other end of the spectrum ... are trial errors that "occur[ ] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." [People v. Anderson (After Remand), 446 Mich. 392, 405-406, 521 N.W.2d 538 (1994) (citations omitted).]
The United States Supreme Court has determined that the erroneous admission of a confession into evidence is a nonstructural *742 defect that does not justify automatic reversal but, instead, requires a harmless-error analysis. Arizona v. Fulminante, 499 U.S. 279, 295, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).
Before a constitutional error can be held harmless, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824,17 L.Ed.2d 705 (1967).[5] The court must "determine, beyond a reasonable doubt [,] that there is no `reasonable possibility that the evidence complained of might have contributed to the conviction.'" Anderson, supra at 406, 521 N.W.2d 538, quoting Chapman, supra at 23, 87 S.Ct. 824. To make this determination, we examine the entire record and consider both defendant's statement and its use by the prosecutor during arguments. Id.
As defendant argues, it is clear from the record in this case that his confession was highly incriminating because it constituted an admission that he was involved in the crimes committed at the record store. The prosecutor used the confession to contradict the story that defendant told at trial, i.e., that he had nothing to do with the crimes at issue here but, when he heard police in the area, had retreated to a hiding place to avoid apprehension for unrelated drug offenses. Accordingly, we cannot conclude that admission of defendant's confession played no part in the jury's determination of his guilt at trial.
However, we do not consider that to be the relevant inquiry for purposes of determining whether the confession "contributed to the conviction" under Chapman. If it were, there could never be a finding of harmless error with respect to improperly admitted evidence as long as it was inculpatory; regardless of the weight of the other evidence properly admitted against a defendant, the improperly admitted evidence inevitably would have helped gain a conviction simply because it was inculpatory. In other words, this understanding of harmless-error analysis would make it impossible to find harmless error except with regard to evidence that was devoid of any inculpatory effect.[6] We reject that understanding of "harmless error" because "[t]o set a barrier so high that it could never be surmounted would justify the very criticism that spawned the harmless-error doctrine in the first place: `Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.'" Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 1838, 144 L.Ed.2d 35 (1999), quoting Traynor, The Riddle of *743 Harmless Error (Ohio State Univ. Press, 1970), p. 50.
Instead, the question before us is whether, absent the confession, "honest, fair-minded jurors might very well have brought in not-guilty verdicts." Chapman, supra at 26, 87 S.Ct. 824. The properly admitted evidence must be "quantitatively assessed" to determine whether, had the improperly admitted evidence not been presented at trial, there is any "reasonable possibility" that a factfinder would have acquitted. See Anderson, supra at 405-406, 521 N.W.2d 538, quoting Fulminante, supra at 307-308, 111 S.Ct. 1246 and Chapman, supra at 23, 87 S.Ct. 824. As recently explained by the United States Supreme Court in Neder: "[A] reviewing court [must] conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error [,] ... it should not find the error harmless." Neder, supra at 1838 (emphasis added). Further, the Supreme Court in Fulminante stated: "When reviewing the erroneous admission of an involuntary confession, the appellate court, as it does with the admission of other forms of improperly admitted evidence, simply reviews the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt." Fulminante, supra at 310, 111 S.Ct. 1246 (emphasis added). If the proof against defendant was so overwhelming that all reasonable jurors would have found guilt even without the confession being brought into evidence, the conviction must stand. Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) ("apart from [the erroneously admitted confessions of the co-defendants]," the case against the defendant was "so overwhelming" that the error was harmless beyond a reasonable doubt); People v. Neal, 182 Mich.App. 368, 373-374, 451 N.W.2d 639 (1990) ("proof of defendant's guilt was so overwhelming, excluding the possibly tainted evidence, that all reasonable jurors would find guilt beyond a reasonable doubt").
To state this in another manner, it is not surprising here that the prosecutor emphasized defendant's confession at trial because this was the best evidence available to refute defendant's trial testimony of how he ended up hidden where the police apprehended him. The question before us requires consideration of the kind of case and argument the prosecutor would have had without defendant's confession. Putting defendant's confession aside, we must consider whether the other evidence adduced by the prosecutor was such that no reasonable juror would have accepted defendant's trial testimony or otherwise acquitted him.
Apart from defendant's confession, the prosecution presented the following admissible evidence of defendant's guilt. All three of the victims identified defendant at trial as one of the men who came to the record store armed and also as the man who fired the shots that caused injury to one of the victims. With regard to two of these eyewitnesses (the parents), defendant argues against their credibility by noting that they failed to pick him out of a lineup the day after the crime. In response, the prosecutor argues that these eyewitnesses were understandably distraught at that time because their son, the victim who was shot, was fighting for his life. In any event, defendant's argument here does nothing to undermine the credibility of the son.
Further, this eyewitness testimony was not the only evidence that linked defendant to the crime. Shortly after hearing gunshots, a witness across the street saw three black males run out of the record shop and enter a K car. She immediately conveyed this information to the police by cellular phone, indicating that the car was heading north on Evergreen Street. This information was relayed by radio to a police officer who observed a K car with *744 three or four black males going north on Evergreen Street. When the police officer made a U-turn to pursue the K car, it accelerated quickly and made turns onto a couple of streets in an apparent attempt to get away. The K car then entered a driveway, and the police officer observed two black males get out of the car and run. The officer testified that he was able to see the person getting out through the passenger door of the car clearly in the illumination provided by the police car's headlights. He further testified that there was no doubt in his mind that the person he saw was defendant.
The officer testified that he then chased the men on foot. Although he lost sight of them briefly, he continued to search the area and discovered defendant huddled underneath a Cadillac. After arresting defendant, the officer found two weapons near this hiding place and, returning to investigate the K car, found a shotgun in the passenger's side of the car lying partially on the seat. Defendant stipulated that the bullets and shell casings found in the record store were consistent with the firearms found in the K car and near defendant's hiding place.
On the basis of our quantitative assessment of the evidence against defendant, apart from his confession, we conclude that any error in the admission of that confession was harmless beyond a reasonable doubt. Fulminante, supra at 308, 111 S.Ct. 1246. The evidence against defendant, independent of his confession,[7] was overwhelming. Harrington, supra; Neal, supra. Considering only that evidence, we conclude there is no reasonable possibility that a factfinder would have acquitted defendant had his confession not been brought into evidence and argument. Chapman, supra at 23, 26, 87 S.Ct. 824. Accordingly, we conclude that, even if the admission of defendant's confession into evidence was erroneous, it was harmless error.
Having reached that conclusion, we need not consider whether, in fact, the admission of defendant's confession was error. Nonetheless, we feel compelled to express our serious concerns regarding defendant's lengthy detention at the police station without a judicial determination of probable cause for his arrest. The record establishes that the Detroit Police Department had a policy requiring either a warrant request or the discharge of a detainee within forty-eight hours of arrest, consistent with Riverside. The regulation further provided that detentions for a longer period had to be approved by the commanding officer, who was authorized to grant approval only in extreme or extraordinary circumstances. This policy was ignored in this case.
Further, it seems there was no "bona fide emergency or other extraordinary circumstance" to justify the police detention of defendant in excess of forty-eight hours. Riverside, supra at 57, 111 S.Ct. 1661. To the contrary, the facts tend to support defendant's argument that he was detained "for the purpose of gathering additional evidence to justify the arrest," a reason the United States Supreme Court has specifically stated cannot justify a lengthy detention. Id. at 56, 111 S.Ct. 1661. Most notably, defendant was held until he confessed and, shortly thereafter, he was released.
Persons arrested without a warrant are "presumptively innocent." Id. at 58, 111 S.Ct. 1661. A prompt judicial determination of probable cause for an arrest is "one of the most important" protections afforded citizens under the Fourth Amendment's prohibition of unreasonable seizures. Id. at 60-61, 111 S.Ct. 1661 (Scalia, J., dissenting). To assure that protection, the forty-eight-hour rule established by Riverside must be carefully observed by *745 police authorities. Those who ignore that rule will do so at their own peril, running the risk that confessions obtained will be deemed inadmissible and that convictions based on those confessions will be reversed on appeal.
We now turn to defendant's second argument, that there was insufficient evidence to establish the corpus delicti of the charges of assault with intent to rob while armed. Specifically, defendant argues that there was no evidence to support one element of the charge, the intent to rob, apart from defendant's confession. Thus, defendant argues that the confession should not have been admitted. We reject this argument because we find the assumption on which it is based, that apart from the confession there was insufficient evidence regarding the intent to rob, to be erroneous.
In the present case, evidence was presented at trial, independent of defendant's confession, to establish the element of intent to rob. "Circumstantial evidence and reasonable inferences" drawn therefrom may be sufficient to prove the elements of a crime. People v. Jolly, 442 Mich. 458, 466, 502 N.W.2d 177 (1993); People v. Nelson, 234 Mich.App. 454, 459, 594 N.W.2d 114 (1999). The intent to rob can be reasonably inferred from the circumstances of the crime and the words used by the intruders when they entered the record store. The eyewitnesses testified that the armed assailants entered their record store late at night after the usual closing time. The store had money from the sale of cassette tapes, CDs, beepers, balloons, gift wraps, and greeting cards. There was no evidence to suggest that the intruders knew anyone in the store, which might suggest some type of personal motivation, other than robbery, for the intruders coming to the store with weapons. Moreover, upon entering the store, the armed intruders said: "[Y]'all know what this is, don't say nothing. This ain't no ... joke." The statement "y'all know what this is" can reasonably be inferred to suggest that the intruders were intending to rob the store. In fact, the testimony of one of the victims indicates that he understood the intruders to mean that they were robbing the store. The victim who was shot testified that, after one of the gunmen put a gun to his mother's head, he pleaded with the intruders not to shoot his mother and father and he told the gunmen, "you can have whatever." Thus, sufficient evidence existed to prove the element of intent to rob independent of defendant's confession.
We affirm.
NOTES
[1] Although the opinion in McCray does not specify whether the Detroit police had arrested and held the defendant there, he was convicted by a jury in the former Recorder's Court for the City of Detroit. We therefore assume that the defendant was arrested and held by the Detroit police. In any event, the procedures required by Riverside and McCray must, of course, be adhered to by all police authorities in Michigan.
[2] People v. Walker (On Rehearing), 374 Mich. 331, 132 N.W.2d 87 (1965).
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] With regard to the question whether the statement should have been suppressed, there are difficult questions presented under either the Riverside or Miranda arguments defendant advances. For example, it is not clear whether a violation of Riverside should result in exclusion of evidence gathered during a lengthy detention. Powell v. Nevada, 511 U.S. 79, 84-85, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994). Further, this case presents a close question whether defendant's Miranda rights were violated by repeated questioning by various officers during his confinement under the factors analyzed in People v. Slocum (On Remand), 219 Mich.App. 695, 700-706, 558 N.W.2d 4 (1996).
[5] Our Supreme Court has recently held that an unpreserved, constitutional error is subject to plain-error analysis rather than harmless-error analysis. People v. Carines, 460 Mich. 750, 764, 597 N.W.2d 130 (1999). Because defendant challenged the use of his confession and was provided a Walker hearing, we do not consider defendant's claim of error regarding the use of this confession to be unpreserved. Ordinarily the request for a Walker hearing would preserve only arguments regarding the voluntariness of a confession. However, under the facts and circumstances of this case, the voluntariness question included considerations of the length of time defendant was detained before the confession and whether he was properly provided information regarding his right to counsel. Thus, the constitutional concerns of Riverside and Miranda were part and parcel of the Walker hearing. In any event, even if defendant's arguments regarding his confession are properly considered, in part, to be unpreserved, our determination that any error resulting from use of the confession at trial was "harmless beyond a reasonable doubt" under Chapman would also necessarily result in a conclusion that use of the confession would not have "affected the outcome of the lower court proceedings," "resulted in the conviction of an actually innocent defendant," or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings," meaning that reversal would not be warranted under the plain-error rule. Carines, supra at 763-764, 597 N.W.2d 130, quoting United States v. Olano, 507 U.S. 725, 736-737, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).
[6] If evidence was not inculpatory, a defendant would have no incentive to challenge its admission in the first place.
[7] None of the evidence we have summarized here was gathered as a result of defendant's confession.