# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LAMAR TYRESE DAVIS,

        Defendant-Appellant.

UNPUBLISHED
September 22, 2015

No. 321481
Wayne Circuit Court
LC No. 13-004358-FC

Before: GADOLA, P.J., and JANSEN and BECKERING, JJ.

PER CURIAM.

Defendant, Lamar Davis, appeals as of right his jury trial convictions of involuntary manslaughter, MCL 750.321,[1] felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm) MCL 750.227b. The trial court sentenced him to 114 months to 15 years' imprisonment for the involuntary manslaughter conviction, two to five years' imprisonment for the felon in possession of a firearm conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

This case arises from a shooting that occurred at defendant's apartment on April 27, 2013. The prosecution presented evidence at trial to establish that defendant left a loaded handgun with his friend, victim Dennis Snyder, to run an errand, while several individuals remained at the apartment smoking marijuana and drinking alcohol. Ray Robinson, who was at the apartment, testified that when defendant returned to the apartment, Snyder gave the 9-millimeter handgun back to defendant. According to Robinson, at his request defendant removed the clip from the gun and pulled the slide back, causing a bullet to fly out of the chamber. Defendant then placed the gun and clip separately on the living room coffee table. Defendant, Snyder, Robinson, and another person proceeded to smoke marijuana in the living room. Later that evening, Robinson heard the sound of a gun "collapsing"—which he identified

---

[1] Defendant was charged with one count of second-degree murder, MCL 769.317, and one count of involuntary manslaughter. The trial court instructed the jury to consider the involuntary manslaughter count in the alternative if it first determined that defendant was not guilty of second-degree murder. The jury found defendant not guilty of second-degree murder, but rendered a guilty verdict on the involuntary manslaughter charge.

as the sound a gun makes when it is being loaded—and he ducked his head down. He then heard a gunshot behind his seat on the living room couch before witnessing a bullet fly out of the wall above him and into Snyder's chest.[2] Snyder was killed almost instantly. Robinson testified that, as he heard the shot, he noticed that the gun and clip had been removed from the table and defendant was no longer in the room. After the shot, defendant re-entered the room with the gun in his hand.

At a police interview, defendant simply claimed to have taken the gun from Snyder and carried it to the bedroom, where he tripped over a shoe and the gun accidentally discharged. The bullet went through the bedroom door, the bedroom wall, and out the living room wall before connecting with Snyder.[3] Defendant never denied firing the fatal shot, but claimed that the shooting was accidental.

Defendant first argues that there was insufficient evidence presented at trial to sustain the involuntary manslaughter conviction. We disagree.

A challenge to the sufficiency of evidence is reviewed de novo, *People v Harverson*, 291 Mich App 171, 175-176; 804 NW2d 757 (2010), but "a reviewing court is required to draw all reasonable inferences and make credibility determinations in support of the jury verdict," *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). This Court must review the evidence in a light most favorable to the prosecution and determine whether the jury could have found each element of the charged crimes proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

The common-law definition of manslaughter is "the unintentional killing of another committed with a lesser mens rea [than the malice required for murder] of gross negligence or an intent to injure[.]" *People v McMullan*, 284 Mich App 149, 152; 771 NW2d 810 (2009) (quotation marks omitted), aff'd 488 Mich 922 (2010). Involuntary manslaughter under a gross negligence theory requires proof beyond a reasonable doubt that the defendant (1) knew of "a situation requiring the use of ordinary care and diligence to avert injury to another," (2) had the ability to "avoid the resulting harm by ordinary care and diligence in the use of the means at hand," and (3) failed to "use care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another." *People v Albers*, 258 Mich App 578, 582; 672 NW2d 336 (2003). Stated a different way, "a defendant who does not seek to cause harm, but is simply reckless or wantonly indifferent to the results, is grossly negligent." *People v Lanzo Const Co*, 272 Mich App 470, 477; 726 NW2d 746 (2006). Circumstantial evidence and reasonable inferences arising therefrom may be sufficient to prove the elements of a crime. *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999). Defendant does not dispute that his actions unintentionally resulted in Snyder's death, and argues

---

[2] Robinson testified that Snyder was standing in the living room, pacing, at the time he was shot.

[3] Anthony Delgreco, a detective for the Inkster Police Department at the time of the incident, testified that the bullet hole in the door was 5'5" above the floor, as was the hole in the wall.

only that the evidence presented at trial was insufficient to show that he acted in a grossly negligent manner.

Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a reasonable juror to find beyond a reasonable doubt that defendant acted with gross negligence. Defendant, having consumed alcohol and marijuana, handled a loaded firearm, an extremely dangerous weapon, in the presence of other individuals. Handling a loaded firearm is certainly the type of situation that requires the use of ordinary care and diligence, as it could result in devastating injury if appropriate care is not taken. The jury could rationally infer that defendant had a heightened awareness of the danger that could result from handling the weapon based on Robinson's testimony that he warned defendant that the gun was cocked and loaded when defendant took the gun from Snyder.

Defendant had the ability to avoid the harm that resulted through the use of ordinary care, but failed to exercise the care required under the circumstances. Defendant could have left the weapon sitting on the coffee table, rather than picking it up, seemingly for no reason, and carrying it around an apartment full of people. Defendant could also have checked to make sure the gun was empty and ensure that the safety mechanism was engaged. If the jury believed Robinson's testimony regarding the "collapsing" sound he heard just before the gunshot, the jury could rationally infer that defendant had reloaded the gun as he entered his bedroom. In that case, defendant could have avoided the harm by not reloading a gun, which he was ineligible to handle as a convicted felon, after consuming alcohol and marijuana.

Even if the jury had believed defendant's theory on appeal that he tripped with a loaded gun in his hand before it fired accidentally, the act of carrying a loaded weapon after drinking and smoking marijuana with other individuals present is still not acting with ordinary care and diligence. Defendant admitted at his interview that he had intended to uncock the gun as he entered the bedroom, but never got a chance to do so. This statement not only illustrates that defendant was aware that ordinary care required uncocking the gun, but also that he failed to use ordinary care under the circumstances. A reasonable person using ordinary care would have uncocked the gun immediately, before he had a chance to stumble and cause the gun to "accidentally" fire. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a reasonable juror to find beyond a reasonable doubt that defendant acted with gross negligence as required for an involuntary manslaughter conviction.

Defendant next argues that the trial court abused its discretion when it denied his motion for a new trial based on ineffective assistance of counsel without holding an evidentiary hearing. Again, we disagree.

This Court reviews a trial court's decision to grant or deny a motion for a new trial for an abuse of discretion. *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012). The same standard applies when this Court considers a trial court's decision on whether to conduct an evidentiary hearing. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Whether a person has been denied effective assistance of counsel is a mixed question of law and fact. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "The trial court's factual findings [if

-3-

any] are reviewed for clear error, while its constitutional determinations are reviewed de novo." *Id*.

Defendant characterizes this issue as a challenge to the trial court's denial of his motion for a new trial without holding an evidentiary hearing. However, his argument on appeal focuses entirely on whether his trial counsel was constitutionally effective. This Court explained in *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007), that an evidentiary hearing can be utilized to develop the factual record when such development is needed to ascertain whether counsel was effective. Defendant does not even attempt to argue that further development of the record is needed in the present case. Rather, defendant argues only that he was prejudiced by his trial counsel's ineffective assistance in persuading him not to take the stand at trial and by counsel's failure to call a certain witness. Because the record was sufficiently developed to allow a thorough analysis of defendant's arguments, the trial court did not abuse its discretion in denying the motion for a new trial without holding an evidentiary hearing.

To the extent that defendant's argument can be characterized as a claim for ineffective assistance of counsel, defendant is not entitled to relief. The right to effective assistance of counsel during a criminal trial is guaranteed by both the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. To establish ineffective assistance, the defendant must show that "(1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012). A defendant must overcome a strong presumption that his counsel's conduct was sound trial strategy. *People v Douglas*, 496 Mich 557, 585; 852 NW2d 587 (2014). In order to show deficient performance, a defendant must show that counsel's performance was outside the wide range of professionally competent assistance, *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), and defense counsel is afforded a wide latitude on matters of trial strategy, *Unger*, 278 Mich App at 242-243. A defendant is prejudiced if there is a reasonable probability that, "but for defense counsel's errors, the result of the proceeding would have been different." *Heft*, 299 Mich App at 81.

Defendant argues that trial counsel was constitutionally ineffective because he "interfered" with defendant's right to testify. A criminal defendant has a fundamental constitutional right to testify at trial. US Const, Am XIV; Const 1963, art 1, §§ 17, 20. Although counsel must advise defendant of this right, the ultimate decision whether to testify at trial remains with the defendant. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). If the accused expresses a wish to testify at trial, the trial court must grant the request, even over counsel's objections. *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985). However, defendant did not express any wish to testify at trial, even after specific questioning by the trial judge regarding his decision not to testify. Defendant stated, in response to questioning by the trial court whether he was going to testify, "I'm not taking the stand." "[I]f defendant . . . decides not to testify or acquiesces in his attorney's decision that he not testify, the right [to testify] will be deemed waived." *Id*. at 685. Defendant clearly made the decision not to testify after consulting with his attorney, and cannot now claim that trial counsel was ineffective for advising him not to take the stand. See *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991).

Defendant also argues that trial counsel was ineffective because he failed to call either defendant or another witness in support of the theory that defendant never unloaded and subsequently reloaded the gun before taking it into the bedroom, contrary to Robinson's testimony. "Decisions regarding whether to call or question witnesses, including the defendant, are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Trial counsel's decision not to highlight the loaded gun theory is therefore presumed to be sound trial strategy, and defendant has put forth no evidence to rebut that presumption. Indeed, defendant's theory that the gun was loaded would be in direct contradiction of the theory advanced by defense counsel at trial. In closing arguments, defense counsel specifically argued that defendant had exercised due care when, pursuant to Robinson's testimony, he removed the clip from the weapon. According to the defense, the gun must not have been completely empty when defendant tripped and the gun discharged, despite due diligence on the part of defendant. Assuming that defendant and/or the alleged witness would have testified consistently with his argument on appeal—that defendant never removed the clip from the gun in the first place—trial counsel's decision not to call defendant or that witness was certainly reasonable and sound trial strategy.

Additionally, defendant has not shown that either of trial counsel's alleged errors was outcome-determinative. Trial counsel's failure to a call a witness, including defendant, is only considered ineffective assistance if it deprived the defendant of a substantial defense. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). A substantial defense is one that might have changed the outcome of the case. *People v Putman*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 318788, issued February 19, 2015); slip op at 4. Defendant argues that he was deprived of a defense when trial counsel refused to highlight the theory that defendant never unloaded the gun. The fact that defendant was carrying around a loaded gun after using marijuana and alcohol, knowing that the gun was loaded, is arguably more indicative of gross negligence than if he had thought the gun was unloaded, as his trial counsel attempted to argue at trial. Failing to advance a meritless argument does not constitute ineffective assistance of counsel. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

Affirmed.


/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Jane M. Beckering