# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

GARY ROBERT SHUTTER,

      Defendant-Appellant.

UNPUBLISHED
August 21, 2018

No. 336613
Macomb Circuit Court
LC No. 2015-004126-FC

Before: SWARTZLE, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of assault with intent to commit murder (AWIM), MCL 750.83, assault with a dangerous weapon (felonious assault), MCL 750.82, malicious destruction of personal property less than $200 (malicious destruction), MCL 750.377a(1)(d), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to prison terms of 5 to 20 years for AWIM, two to four years for felonious assault, 98 days for malicious destruction, and two years for felony-firearm. We affirm.

## I. BACKGROUND

Defendant's convictions result from his shooting of Richard Simmons's truck with a shotgun as Simmons drove the truck past defendant's house. Simmons lived with his aunt in the house next to defendant and testified that he and his aunt had disagreements with defendant in the past. Defendant would often be intoxicated and would confront Simmons and his aunt about a variety of topics. One of defendant's favorite topics appeared to be marijuana—specifically his belief that Simmons had marijuana in his possession or was growing marijuana, despite there being no evidence in the record that Simmons possessed or grew marijuana. On the day in question, Simmons was leaving for work when defendant, who was heavily intoxicated, confronted Simmons and asked for some marijuana. Simmons told defendant that he did not possess the drug and instructed defendant to stop harassing him and his aunt. Defendant then became very angry and threatened Simmons by saying, "I know what to do with people like [you]."

Defendant and Simmons returned to their respective abodes. Simmons warned his aunt about defendant's behavior and left shortly thereafter in his truck. As Simmons passed

-1-

defendant's home, a shotgun blast went off and pellets peppered the rear panel of Simmons's truck, just in front of the gas tank. Simmons stopped the truck and defendant came running out of his house, apologizing to Simmons. Not knowing whether defendant was still carrying a gun, Simmons retrieved his own firearm from his truck and fired a warning shot in defendant's vicinity. Defendant returned to his home and police arrived shortly thereafter.

When defendant was arrested, he blew a 0.16 blood alcohol count. Defendant's explanation for the shooting was that he had his shotgun leaning next to his front door and he accidentally knocked the gun over. According to defendant, the weapon fired, with the safety on, when he went to pick it up. Officer Sean Sullivan and Detective Gregory Booton of the Warren Police Department tested defendant's shotgun and testified that, after several tries, defendant's gun would not fire with the safety on. Moreover, for defendant to have shot the victim in the manner he claimed, he would have had to shoot through dense bushes outside the front of his home. The officers found no evidence that the projectiles passed through defendant's bushes, and Detective Booton testified that he believed that defendant had actually aimed his shotgun at Simmons.

The jury ultimately convicted defendant of AWIM, felonious assault, malicious destruction, and felony-firearm for which the trial court sentenced defendant as noted above. This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence underlying his convictions. Rather than attacking each criminal element, defendant argues that the prosecution did not present sufficient evidence to show the intent to kill Simmons necessary to convict defendant of AWIM, *People v Henderson*, 306 Mich App 1, 9-10; 854 NW2d 234 (2014), the intent to injure or place Simmons in fear of an imminent battery necessary to convict defendant of felonious assault, *People v Bosca*, 310 Mich App 1, 20; 871 NW2d 307 (2015), or the intent to injure Simmons's property necessary to convict defendant of malicious destruction, *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999). We disagree.

Challenges to the sufficiency of the evidence are reviewed de novo. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). On review, we must determine if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that the prosecution proved the essential criminal elements beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "Because intent may be difficult to prove, only minimal circumstantial evidence is necessary to show a defendant entertained the requisite intent." *People v Harverson*, 291 Mich App 171, 178; 804 NW2d 757 (2010). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Flick*, 487 Mich 1, 24-25; 790 NW2d 295 (2010) (internal citation and quotation marks omitted).

Defendant argues that the prosecutor presented no evidence that he intended to shoot at Simmons. The record does not support this assertion. Rather, several pieces of circumstantial

evidence indicate that defendant did intend to shoot Simmons. Defendant and Simmons had a history of disagreements, including a rather heated confrontation shortly before the shooting, at the end of which, defendant told Simmons, "I know what to do with people like [you]." Despite defendant's theory that the gun accidentally discharged with the safety on, testing on defendant's firearm indicated that the gun would not fire with the safety on. Moreover, for defendant to have shot the victim in the manner he claimed, he would have had to shoot through dense bushes outside the front of his home. The officers found no evidence that the projectiles passed through defendant's bushes indicating to the officers that defendant had actually aimed his shotgun at Simmons. Viewing the testimony of Simmons, Detective Booton, and Officer Sullivan in a light most favorable to the prosecution, there was sufficient circumstantial evidence for a rational jury to conclude that defendant purposefully fired his gun at Simmons intending both to kill Simmons and to place him in reasonable apprehension of an immediate battery.

Concerning the intent to kill, defendant argues that he could not have intended to kill Simmons because he did not attempt to shoot Simmons a second time, and the shot defendant did fire was directed toward the back of Simmons's truck, rather than at the front where Simmons was sitting. Regarding defendant's refraining to shoot a second time, it is not impossible that defendant possessed the requisite intent to kill and injure Simmons, but changed his mind after his first failed attempt. Concerning the placement of the shot at the back of Simmons's truck, it is also possible that defendant simply missed his intended target. Considering defendant's 0.16 blood alcohol content, it is likely that defendant's aim was less than stellar. Accordingly we conclude that the prosecution presented sufficient evidence for the jury to conclude that defendant possessed the requisite intent to commit AWIM and felonious assault.

Regarding his malicious-destruction conviction, defendant argues that he could not simultaneously possess the intent to kill Simmons necessary to support an AWIM conviction and the intent to injure Simmons's property necessary to support a malicious destruction of personal property conviction. Sufficient evidence was presented that defendant aimed his shotgun at Simmons, who was driving his truck past defendant's home. A reasonable conclusion from the evidence is that defendant intended to kill Simmons by firing a shot that would first pass through—and thereby injure—Simmons's vehicle. Thus, sufficient evidence was presented for the jury to find the requisite intent to convict defendant of AWIM, felonious assault, and malicious destruction of property. And, because defendant committed the predicate felonies with a firearm, sufficient evidence supports defendant's felony-firearm conviction.

B.     Ineffective Assistance of Counsel

Defendant next argues that he was deprived of the effective assistance of counsel. Where, as here, the defendant fails to request a *Ginther*[1] hearing or move for a new trial in the matter, our review is limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

---

[1] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

An appellate court is required to reverse a defendant's conviction when defense "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant requesting reversal of an otherwise valid conviction bears the burden of proving "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

To prove the first prong, "[t]he defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Regarding the second prong, a defendant is prejudiced if there is a reasonable probability that, "but for defense counsel's errors, the result of the proceeding would have been different." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012).

*Expert Testimony*. Defendant first argues that defense counsel was ineffective because defense counsel failed to investigate a recall of Winchester shotguns similar to defendant's and failed to present an expert witness who could testify that defendant's gun misfired due to a mechanical failure. Defendant, however, has not provided this Court with a signed affidavit of an expert willing to testify that defendant's gun misfired. Defendant attached to his appellate brief recall notices for the Winchester SXP Waterfowl Hunter, SXP Black Shadow, SXP Turkey Hunter, and SXP Long Beard shotguns. Nonetheless, defendant's shotgun, the Winchester SXP Defender, is not included as a recalled firearm, and defendant has not made any evidentiary showing linking the defects in the recalled weapons to his own. Accordingly, by failing to establish the factual predicate for his claim, defendant has waived this issue. *Davis*, 250 Mich App at 368.

*Admission of Statements to Police*. Defendant argues that his counsel was ineffective because defense counsel inconsistently argued that pre-*Miranda*[2] statements defendant made should and should not be admitted as evidence. At the preliminary examination, Officer Benczkowski testified that, when he arrived at the scene, defendant immediately told him that the shooting was an accident and that the gun had misfired. Officer Bechill similarly testified that defendant told him that he and Simmons had an altercation and that he accidentally fired his gun. It is not contested that defendant was not in custody at the time he made the statements. At a *Walker*[3] hearing, defense counsel argued first that the statements to both officers should be

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[3] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

excluded, then stipulated that only the statement to Officer Benczkowski should be admitted, before finally arguing again that both statements should be excluded. Ultimately, the trial court excluded both statements.

We conclude that defendant has failed to overcome the presumption that defense counsel's performance was the result of reasonable trial strategy. While defendant's statements to the officers that he fired the gun accidentally would have bolstered his accident theory of defense, defendant's statement to Officer Bechill that he had an altercation with Simmons provided evidence of defendant's intent to shoot Simmons. Defense counsel's seemingly inconsistent arguments at the *Walker* hearing were plainly calculated to admit the non-prejudicial statement to Officer Benczkowski while excluding the prejudicial statement to Officer Bechill. When it became apparent that the pre-*Miranda* statements would rise and fall as a lot, defense counsel took the safer course of action and sought exclusion of both statements. Defense counsel was ultimately successful in excluding the statements and thereby prevented the admission of the prejudicial statement. Such a decision is a quintessential example of trial strategy—one we will not second guess on appeal.

*Prosecutor's Arguments.* Next, defendant contends that he was deprived of effective assistance of counsel because counsel failed to object to two of the prosecutor's arguments. First, the prosecutor commented that, because defendant's home was disorganized, so was defendant's personality and behavior. The prosecutor said, "Let's see what kind of conditions when [sic] [Officer Sullivan] observed walking in [defendant's] home. I think it's fair to conclude it's much like his personality and much like his behavior that night, in disarray and indisputably bad." Defendant argues that this was an improper propensity argument. Even assuming that this argument was improper, the statement did not prejudice defendant. Even if defendant was disorganized, his disorganization does not amount to evidence of an intent to harm another person or their property. Rather, the testimony of Simmons and the two officers and the lack of evidence that defendant accidentally shot Simmons provided strong evidence of defendant's intent to harm Simmons and his property. It is highly unlikely that the jury convicted defendant because he was a disorganized person.

Second, defendant argued that defense counsel should have objected to the prosecutor's statement in closing that, if voluntary intoxication was "what caused the accident, defense loses." Voluntary intoxication is not a defense in Michigan. MCL 768.37. Thus, the prosecution's statement was an accurate statement of the law, leaving defense counsel without a valid objection. Defense counsel cannot be ineffective for failing to make a futile objection. *People v Milstead*, 250 Mich App 391, 401; 648 NW2d 648 (2002).

*Lesser-Included Offense.* Finally, defendant argues that defense counsel was ineffective because, during defense counsel's closing argument, defense counsel told the jurors that if they believed defendant had intentionally shot the gun, they should find defendant guilty of AWIM, rather than assault with intent to do great bodily harm less than murder (AWIGBH). During his closing argument, defense counsel said:

> I do agree with [the prosecutor]. Either you decide that [defendant] intended to kill [Simmons] or you doubt it. I'd agree when you shoot off the shotgun, if it's done intentionally, you're not doing it with the intent to hurt somebody or do

great bodily harm, so I'd agree with [the prosecutor] it's really not an option . . . .
I think that if you intentionally shoot a 12 gauge with those pellets, which are
pretty big, if you intentionally [d]o that, you're probably intending to kill the
person, not just hurt them.

Again, defendant has failed to overcome the strong presumption that defense counsel's argument
was sound trial strategy. Defense counsel appears to have made the strategic decision that, by
framing the jury's choice as between the polar AWIM and not guilty—rather than between
AWIM, AWIGBH, and not guilty—the jury would be more likely to acquit defendant than
convict him of AWIM. That in hindsight defense counsel's strategy was not completely
successful does not render it unreasonable; nor does it render counsel's assistance ineffective.
*People v Trakhtenberg*, 493 Mich 38, 63; 826 NW2d 136, 150 (2012).

Affirmed.


/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly

-6-