# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
July 21, 2016

v

RAYMOND LAMONT CHEATHAM,

Defendant-Appellant.

No. 327197
Kent Circuit Court
LC No. 14-010126-FC

Before: MURRAY, P.J., and SAWYER and METER, JJ.

PER CURIAM.

Defendant was convicted by a jury of assault with intent to commit murder, MCL 750.83. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 40 to 80 years' imprisonment. He now appeals his conviction and sentence as of right. We affirm defendant's conviction, but remand this case pursuant to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), for further sentencing proceedings.

Defendant's conviction arose from a shooting that occurred in Grand Rapids in the early morning hours of October 3, 2014. A single victim, Tiesean Hatchett, was injured in the shooting and required emergency surgery. The prosecution's theory at trial was that defendant, a rival drug dealer, shot Hatchett in retaliation for an earlier physical altercation during which Hatchett and another individual "beat up" defendant. To that end, the prosecution presented, among other witnesses, Adreinne McGee, who testified that she observed defendant and Hatchett engaged in a physical altercation just hours before the shooting; Hatchett, with the help of another individual, got the best of defendant during that fight. Likewise, the prosecution presented Dennis Brown, who testified that later on the night in question, he and two other individuals—including defendant, whom Brown had never met before that night—met with Hatchett to facilitate a drug deal, during which defendant grabbed Hatchett and said, "Hey, Mother F***er, remember me?" before shooting Hatchett multiple times at close range. Finally, the prosecution presented Chanita Rapier, who testified that she was also present when the shooting occurred, and that the shooter repeatedly uttered the word "revenge" before shooting Hatchett.

On appeal, defendant first argues that there was insufficient evidence to support his conviction. Specifically, defendant argues that the evidence was insufficient to establish, beyond a reasonable doubt, his identity as the perpetrator. We disagree. We review a challenge to the

-1-

sufficiency of the evidence to determine "whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution and defer to the jury's determination regarding the weight of the evidence and the credibility of the witnesses. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Nowack*, 462 Mich at 400 (quotation marks and citation omitted).

"[I]dentity is an element of every offense," *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), and, as with every other element of the crime, the prosecution must prove the defendant's identity as the perpetrator beyond a reasonable doubt, *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). As we have recognized, "positive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Additionally, identity may be proven by circumstantial evidence and any associated reasonable inferences. *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999); *Kern*, 6 Mich App at 409-410.

Here, Brown identified defendant as the shooter in a pretrial photographic lineup and also identified him at trial. Brown expressed confidence in his identification, stating that he had the opportunity to observe defendant's face on the night of the shooting, and he testified to the effect that he would not have taken the stand as a witness if he was not sure of his identification. While defendant argues that Brown's identification was not credible, he concedes that credibility is a question for the trier of fact. *Davis*, 241 Mich App at 700; see also *Unger*, 278 Mich App at 222. The jury had the opportunity to hear and observe Brown's testimony, and we will not second-guess the jury's credibility determinations. Moreover, other evidence also had a bearing on defendant's identity, such as the fact that defendant had been in a physical altercation with Hatchett just hours before the shooting and that the shooter uttered "revenge" multiple times and asked Hatchett if he "remembere[d]" him before shooting. The jury could rely on this circumstantial evidence in support of its verdict. *Nelson*, 234 Mich App at 459; *Kern*, 6 Mich App at 409-410. The evidence was thus sufficient to support defendant's conviction beyond a reasonable doubt.

Defendant next argues that the trial court committed plain error when it allowed a detective to testify regarding cellular telephone "ping" technology—namely, that defendant's cellular telephone was located in the area of the shooting at the time in question—despite the fact that she had limited knowledge of the topic and was not qualified as an expert. We conclude, however, that defendant has waived appellate review of this claimed evidentiary error. Defendant concedes that it was his own trial counsel who elicited this allegedly damaging testimony. It is well settled that "error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence" because by doing so, the aggrieved party waives the error. *People v Griffin*, 235 Mich App 27, 46; 597 NW2d 176 (1999), overruled on other grounds by *People v Thompson*, 477 Mich 146; 730 N.W.2d 708 (2007); see also *People v Jones*, 468 Mich 345, 352 n 6; 662 NW2d 376 (2003). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotations marks and citations omitted). Thus, there is no error to review. *People v Kowalski*,

489 Mich 488, 504; 803 NW2d 200 (2011). Even if defendant had not waived the error, however, we would find that any error was harmless where the witness made clear to the jury that she was not an expert in the area of "pings" and where her testimony on that matter did not place defendant at the scene of the crime.

Defendant also claims, however, that his trial counsel was ineffective for eliciting the above testimony. Again, we disagree. Because no *Ginther*[1] evidentiary hearing was held in the trial court, our review of this issue is limited to the facts apparent on the existing record. *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008).

Effective assistance of counsel is presumed. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). To prevail on a claim of ineffective assistance of counsel, a defendant must establish both (1) that his defense counsel's performance was objectively deficient and (2) that the deficient performance prejudiced his defense. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994).

On this record, we cannot conclude that defense counsel's actions in eliciting the challenged testimony were objectively unreasonable. Importantly, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, . . . on information supplied by the defendant." *Strickland*, 466 US at 691. Here, defendant's trial counsel explained, at a hearing on defendant's motion for a new trial or *Ginther* hearing, that she questioned the detective about the cellular telephone records because defendant had indicated during trial that those records "should show that he was in a different location" at the time of the shooting. It was thus reasonable, in light of defendant's representation, for trial counsel to question the detective about the cellular telephone records. Indeed, contrary to defendant's argument, trial counsel was actually somewhat successful in this regard, because the detective could only say, based on the records before her, that defendant's cellular telephone was "downtown" at *some* point on the night in question, without more specificity regarding exactly when and where. Trial counsel's action was thus not objectively deficient, and defendant's claim of ineffective assistance of counsel must fail.

Defendant next argues that he was denied the effective assistance of counsel when his trial counsel failed to investigate an alibi witness, Tiffany Perry, or to call Perry at trial, and that the trial court abused its discretion in denying his motion for a new trial on this ground. We disagree. We review for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003).

In support of his claim, defendant refers to Perry's affidavit, submitted with his motion for a new trial, in which Perry averred that she was with defendant and another friend the entire day and night of the shooting. Perry further averred that she tried to contact defendant's trial

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

counsel, but her messages went unreturned. However, at the hearing on defendant's motion for a new trial or *Ginther* hearing, defendant's trial counsel indicated that she was not made aware that defendant had a potential alibi, despite meeting with defendant, receiving his letters from jail, and speaking with his family members. As such, the trial court did not abuse its discretion in denying defendant's motion for a new trial on this ground and we find no basis for reversal.[2]

Defendant next argues that the trial court abused its discretion and violated his constitutional right of confrontation when, at the hearing on his motion for a new trial or *Ginther* hearing, it received a statement from his trial counsel outside his presence, without allowing any cross-examination and without an oath by the attorney, and then denied his request for a formal *Ginther* hearing. We disagree. A trial court's decision whether to hold a *Ginther* hearing is reviewed for an abuse of discretion. See, generally, *Unger*, 278 Mich App at 216-217, and *People v Mischley*, 164 Mich App 478, 481-482; 417 NW2d 537 (1987). Constitutional questions are reviewed de novo. *People v Sadows*, 283 Mich App 65, 67; 763 NW2d 93 (2009).

As noted above, the trial court held a hearing to determine whether to grant defendant's motion for a new trial or *Ginther* hearing. At that hearing, the trial court asked defendant's trial counsel questions for the purpose of aiding its determination regarding whether to grant the motion. While the trial court did not state as much, it is apparent that the trial court accepted defense counsel's representations as its reason for denying the motion. That is, the trial court implicitly found defense counsel to be credible and, as such, that there was "no basis" for holding a *Ginther* hearing. On this record, we cannot conclude that the trial court abused its discretion in reaching this conclusion. The trial court did not violate defendant's constitutional right of confrontation. A defendant does not have a constitutional right to be present at all post-conviction motion hearings. *People v Ormsby*, 48 Mich 494, 495; 12 NW 671 (1882). In the absence of any applicable and binding authority supporting that defendant had a right to be present at the hearing in question or that the trial court otherwise erred in resolving the motion, we decline to hold that the trial court's actions violated defendant's right of confrontation.

Defendant lastly argues that he is entitled to a remand for resentencing because the trial court relied upon facts not found by the jury or admitted by defendant in scoring several offense variables (OVs), the result of which was to increase defendant's minimum sentence range under the legislative guidelines in violation of his Sixth Amendment right to a jury trial. Because defendant did not object to the scoring of the offense variables at sentencing on Sixth Amendment grounds, we review this issue for plain error affecting substantial rights. *Lockridge*, 498 Mich at 392.

The Michigan Supreme Court in *Lockridge* held that Michigan's sentencing scheme violates the Sixth Amendment right to a jury trial because it requires "judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the 'mandatory

---

[2] Defendant mentions other issues in the context of his "alibi" issue, but they are not included in the statement of questions presented for appeal. MCR 7.212(C)(5).

minimum' sentence under [*Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013)]." *Lockridge*, 498 Mich at 364. See also *People v Stokes*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 321303); slip op at 6. To fix this constitutional defect, the Supreme Court rendered the sentencing guidelines advisory only. *Lockridge*, 498 Mich at 364, 391.

Defendant was assessed 25 points for OV 1, 5 points for OV 2, 25 points for OV 3, and 1 point for OV 12. The prosecution concedes on appeal that the scoring of OVs 1, 2, 3, and 12 requires a remand under *Lockridge*.

We note that defendant was assessed a total of 81 OV points, which, when combined with his prior record variable score of 107 points, placed him in the F-V cell for class A offenses. MCL 777.62. As a result, defendant's minimum sentence range, as a fourth-offense habitual offender, was calculated at 225 to 750 months' imprisonment or life. MCL 777.62; MCL 777.21(3)(c). Deducting 56 points from defendant's OV score would result in a new OV total of 25 points, placing defendant in the F-II cell rather than the F-V cell, with a resulting minimum sentence range, as a fourth-offense habitual offender, of 126 to 420 months. MCL 777.62; MCL 777.21(3)(c). Under the circumstances, we remand this case to the trial court for proceedings consistent with those outlined by the Supreme Court in *Lockridge*, 498 Mich at 395-398, citing *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005).

We affirm defendant's conviction but remand this case for further proceedings regarding defendant's sentence in accordance with *Lockridge*. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Patrick M. Meter