*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RAUL CONTRERAS,

Defendant-Appellant.

UNPUBLISHED
May 20, 2025
1:40 PM

No. 367237
Oakland Circuit Court
LC No. 2020-274746-FC

Before: WALLACE, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

After a jury trial, defendant was convicted of two counts of assault with intent to commit murder, MCL 750.83; one count of discharge of a firearm in or at a building, MCL 750.234b; one count of malicious destruction of personal property ($200 or more but less than $1,000), MCL 750.377a(1)(c)(*i*); two counts of malicious destruction of personal property ($1,000 or more but less than $20,000), MCL 750.377a(1)(b)(*i*); and five counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 18 to 50 years each for the assault with intent to commit murder convictions, 3 to 10 years for the discharge of a firearm in or at a building conviction, two to five years each for the malicious destruction of personal property ($1,000 or more but less than $20,000 convictions), and 365 days for the malicious destruction of property ($200 or more but less than $1,000) conviction, each to be served consecutively to the two-year prison terms for the five felony-firearm convictions. Defendant now appeals as of right. We affirm.

The events that led to defendant's convictions began with Facetime calls, phone calls, and text messages between defendant and John Alaniz. Defendant and Alaniz argued over Alaniz's current relationship with Jasmine Delcher, who had previously dated defendant and was still in contact with defendant.[1] On an evening in March 2020, defendant and Alaniz agreed to a physical

---

[1] At trial, defendant testified that Alaniz said he was mad that defendant was talking to Delcher. Defendant then changed his testimony and suggested that he merely assumed Alaniz was mad

-1-

fistfight at Alaniz's residence. However, when defendant, Jeremiah Martin, and Tyler Squier arrived at Alaniz's residence, Martin immediately fired two shots from a semiautomatic handgun. Defendant also began firing his AK-47 at Alaniz as Alaniz and his friend, William McCord, along with two other friends, exited the residence together. Defendant continued firing after he shot Alaniz, and both Alaniz and McCord hid behind a vehicle parked in Alaniz's driveway. While defendant continued firing, McCord ran back into the residence to check on Alaniz's relatives, who were inside sleeping.

After defendant drove away, Alaniz went back into his home to find that his dog had been killed by a bullet and his home sustained damage from several other bullets. At trial, defendant claimed self-defense, testifying that when he arrived, he saw Alaniz walking toward him with his hands under his hoodie holding something, which he assumed was a gun. Defendant began shooting and only stopped when he felt safe to drive away.

Defendant now appeals his convictions, arguing that there was insufficient evidence to support his convictions and that he was denied a fair trial as a result of the ineffective assistance of counsel. Defendant filed a Standard 4 brief arguing that he was denied the effective assistance of counsel, he was prejudiced by the denial of a speedy trial, he was prejudiced by the admission of false testimony, and that his convictions were not supported by sufficient evidence. Defendant also asks this Court to remand for resentencing. We conclude that none of defendant's arguments have merit and remand is not warranted.

## I. SUFFICIENCY OF THE EVIDENCE

### A. MALICIOUS DESTRUCTION

Defendant first argues that there was insufficient evidence to prove beyond a reasonable doubt that he was guilty of malicious destruction of personal property more than $1,000, but less than $20,000. We disagree.

This Court reviews challenges to the sufficiency of the evidence de novo. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). We must determine whether the evidence was sufficient to justify a rational trier of fact's conclusion that the evidence proved the essential elements of the crime beyond a reasonable doubt. *Id*. This Court must also "draw reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). We will not interfere with the trier of fact's determination of the weight of the evidence or credibility of the witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

To be convicted of malicious destruction of property, a defendant must have intended to injure or destroy the property in question. *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999). "An actor's intent may be inferred from all the facts and circumstances, and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient."

---

because he was talking to Delcher, but did not actually know if that was the reason Alaniz was mad. Alaniz testified that the two had bickered back and forth about the situation.

*People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012) (quotation marks and citation omitted). In addition, "[i]dentity is an essential element of every crime." *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018).

Defendant argues that there was no evidence to support a finding that the bullets that damaged the Ford Escape and the Volkswagen Passat parked in Alaniz's driveway came from defendant's rifle. Defendant identified the gun that was in evidence as his gun and admitted that it was the gun he used to shoot at Alaniz and his residence. When Alaniz walked outside, defendant ran to his front seat, grabbed his weapon, and began firing at Alaniz. Defendant did not realize that he shot Alaniz, but he admitted that he was aiming at him. Defendant remembered shooting at the vehicles and hitting them when he was trying to shoot Alaniz.

Kathleen Miller, a forensic laboratory investigator for the Oakland County Sheriff's Department who investigated the crime scene, observed that all three vehicles parked in the driveway were facing the house and that they were all damaged. Miller testified that the damage to the windows, tires, and trunks of the vehicles was consistent with damage caused by a fired projectile. Miller testified that she pulled fired bullets and fragments of bullets from the vehicles. Miller described damage caused to the Volkswagen's roof and trunk by a fired bullet. Miller testified that the back window of the red Ford Escape was blown out by a fired bullet and had a few other areas of damage consistent with a fired bullet. Miller stated that trajectory of the bullets was toward the vehicles because the damage was inward. Miller retrieved fired bullets and fragments of bullets from the vehicles, but no shell casings. Miller was unable to conclude how many bullets damaged the vehicles or to match the holes in the vehicles to the fired cartridge cases. However, 19 of the 21 shell casings that Miller found in front of the house were linked to defendant's rifle.

This evidence was sufficient for a rational trier of fact to conclude that defendant intentionally damaged the red Ford Escape and the Volkswagen Passat. Miller testified that the trajectory of the bullets was toward the vehicles because the damage was inward which supports a conclusion that the bullets came from defendant, who was parked in the street and facing toward Alaniz's residence when he fired. Miller did not testify about the caliber of the fired bullets found in the vehicles, but defendant admitted to firing at the vehicles in an attempt to shoot Alaniz. Furthermore, defendant's intent to damage the vehicles may be inferred from his willingness to shoot the vehicles in his attempts to shoot Alaniz. See *Russell*, 297 Mich App at 721. Therefore, there was sufficient evidence for a rational trier of fact to find defendant guilty of two counts of malicious destruction of personal property more than $1,000, but less than $20,000.

### B. ASSAULT WITH INTENT TO COMMIT MURDER

Defendant also argues that there was insufficient evidence to justify a rational trier of fact's conclusion that the essential elements of assault with intent to commit murder as to McCord were proven being a reasonable doubt. We disagree.

The elements of assault with intent to commit murder are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018) (quotation marks and citation omitted). "Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to

show that a defendant had the requisite intent." *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014). Moreover, intent to kill may be inferred from all the facts in evidence, including the use of a deadly weapon. *Id*.

Alaniz testified that he and defendant did not exchange any words when defendant arrived at Alaniz's residence. As soon as Alaniz and defendant made eye contact, defendant emerged from his vehicle pointing his weapon at Alaniz. After defendant shot Alaniz in the shoulder, Alaniz hid behind one of the vehicles in the driveway. Defendant continued shooting toward Alaniz, the vehicles, and the house. McCord also hid beneath one of the vehicles because defendant was shooting in his direction. When McCord ran back into the house, he testified, bullets were flying past him.

Miller found 19 fired cartridge casings from a rifle at the scene. Rachel Grace, a forensic laboratory investigator for the Oakland County Sheriff, matched 15 of the fired cartridge cases to defendant's rifle. Grace testified that she could not state with scientific certainty that the remaining four fired cartridge casings were fired from defendant's rifle, but she was able to confirm that they were fired from an assault rifle with the same caliber, model, and size of defendant's rifle. Miller testified that she did not find any other shell casings or fired bullets around Alaniz's residence that were not fired by defendant's AK-47 rifle or Martin's handgun.

A defendant's intent need not be directed at an identified individual or the eventual victim. *People v Abraham*, 256 Mich App 265, 270; 662 NW2d 836 (2003). In *People v Plummer*, 229 Mich App 293, 304 n 2; 581 NW2d 753 (1998), this Court explained that the doctrine of transferred intent permits culpability for murder where the defendant intended to shoot someone other than the victim. Intent may be transferred to an unintended victim even if the victim does not suffer an injury during the assault. *People v Lawton*, 196 Mich App 341, 350-351; 492 NW2d 810 (1992) (citation omitted).

There was sufficient evidence to support a finding that defendant intended to kill Alaniz. This intent may be transferred to McCord even though McCord did not suffer any injuries. When Alaniz and McCord heard defendant pull up to Alaniz's house, they went outside. McCord saw Alaniz drop to the ground. McCord ran to hide underneath a vehicle when the vehicle was hit by bullets. McCord testified that there were bullets flying around the area in front of the house. Defendant shot at Alaniz in quick bursts of gunshots at the same time that McCord was running along with Alaniz. Defendant also shot at the vehicles where McCord and Alaniz were hiding. McCord ran back into the house to check on Alaniz's mother and younger brother and bullets were flying through the hallway in the house.

Considering that the intent to kill may be inferred from all the facts in evidence, including the use of a deadly weapon, and may be transferred to an unintended victim, there was sufficient evidence for a rational trier of fact to conclude that defendant had the intent to murder McCord.

## C. SELF-DEFENSE

Defendant contends that there was insufficient evidence from which the jury could find beyond a reasonable doubt that he did not act in self-defense. We disagree.

Under the common law, the affirmative defense of self-defense justified the killing of another person if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself. [*People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013) (quotation marks, footnote, and citations omitted).]

The Self-Defense Act (SDA), MCL 780.971 *et seq*., "codified the circumstances in which a person may use deadly force in self-defense . . . ." *Guajardo*, 300 Mich App at 35 (quotation marks and citation omitted). However, the SDA did not change the common-law requirement that "a person have an honest and reasonable belief that there is a danger of death, great bodily harm, or a sexual assault in order to justify the use of deadly force." *Id*. at 35-36. The SDA provides, in relevant part:

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

(b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual. [MCL 780.972(1).]

If a defendant produces some evidence "from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt." *People v Dupree*, 486 Mich 693, 712; 788 NW2d 399 (2010).

Defendant testified that when he arrived at Alaniz's residence, he walked to the back of his vehicle and noticed Alaniz approaching him. At the same time defendant saw Alaniz, he heard two shots. Defendant noticed that Alaniz was holding something underneath his hoodie. Defendant assumed Alaniz was holding a gun because he knew that Alaniz typically carried a gun. Defendant immediately ran back to the driver's side of the vehicle and grabbed his rifle. Defendant began shooting at Alaniz. Defendant explained that his only goal was to shoot Alaniz to eliminate the threat against him.

Viewed in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant did not act in self-defense. Alaniz testified that there was no discussion between him and defendant when defendant drove up to Alaniz's residence. Alaniz and defendant made eye contact as Alaniz exited his residence and defendant emerged from his vehicle pointing his weapon at Alaniz. After defendant shot Alaniz in the shoulder, Alaniz hid behind one of the vehicles in the driveway. Defendant admitted that he kept shooting at Alaniz in

-5-

quick bursts of gunshots even after Alaniz hid behind a vehicle. Defendant admitted to shooting the vehicles in his attempts to shoot Alaniz.

Contrary to defendant's testimony that he heard two shots ring out as Alaniz exited his residence, Squier testified that Martin shot his gun twice as soon as they drove up to Alaniz's residence—before Squier noticed anyone exit the residence. McCord also testified that he heard a gunshot before he and defendant ran outside. Additionally, defendant knew that Martin was carrying a firearm that day. Defendant further admitted that neither his vehicle nor anyone in his vehicle was damaged or injured by gunshots.

In addition, Miller found 19 fired cartridge casings from a rifle at the scene. Grace matched 15 of the fired cartridge cases definitively to defendant's rifle, and testified that the other four were fired from an assault rifle with the same caliber, model, and size of defendant's rifle. Miller did not find any other shell casings or fired bullets around Alaniz's residence that were not fired by defendant's AK-47 or Martin's handgun. Considering this evidence, a jury could have rationally found beyond a reasonable doubt that defendant did not shoot Alaniz in self-defense.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

### A. OV SCORING

Defendant asserts that his counsel was ineffective by failing to object to the scoring of offense variable (OV) 13 and OV 14. We disagree.

Defendant did not raise his ineffective-assistance claims in a motion for a new trial or request for a *Ginther*[2] hearing in the trial court. However, defendant filed a motion to remand for a *Ginther* hearing in this Court. Therefore, this issue is preserved. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). This Court denied defendant's motion for remand because defendant failed to persuade the Court of the necessity of a remand.[3] Therefore, this Court's review of this issue is limited to errors apparent on the record. *Id*.

A claim of ineffective assistance of counsel involves mixed questions of law and fact. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). A trial court's findings of fact, if any, are reviewed for clear error. *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022). But whether the facts constitute a violation of the defendant's right to the effective assistance of counsel is a question of law that this Court reviews de novo. *Id*. (citation omitted).

Defendants have the guaranteed right to the effective assistance of counsel. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "To establish ineffective assistance of counsel, defendant must show (1) that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] *People v Contreras*, unpublished order of the Court of Appeals, entered July 2, 2024 (Docket No. 367237).

reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023) (quotation marks and citations omitted). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Additionally, "the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant contends that he should not have been assessed 10 points for OV 13 because he did not commit three or more crimes against a person. MCL 777.43 guides the scoring of OV 13, which considers a "continuing pattern of criminal behavior," and provides in relevant part:

(1) Offense variable 13 is continuing pattern of criminal behavior. Score offense variable 13 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

* * *

(c) The offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person ............................................................. 25 points

(d) The offense was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person or property …….….... 10 points

Defendant was assessed 10 points for OV 13. Contrary to defendant's argument, MCL 777.43 dictates a score of 10 points for "a combination of 3 or more crimes against a person or property[.]" MCL 777.43(1)(d). Defendant was found guilty of two counts of assault with intent to commit murder and two counts of malicious destruction of property. Thus, defendant was convicted of a combination of three or more crimes against a person or property and was properly assessed 10 points for OV 13.

Defendant also argues that he was improperly assessed any points for OV 14 because there was no evidence that defendant was the leader in this multiple-offender situation. Defendant was assessed 10 points for OV 14. MCL 777.44 provides the following for scoring OV 14:

(1) Offense variable 14 is the offender's role. Score offense variable 14 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) The offender was a leader in a multiple offender situation ….. 10 points

(b) The offender was not a leader in a multiple offender situation … 0 points

(2) All of the following apply to scoring offense variable 14:

(a) The entire criminal transaction should be considered when scoring this variable.

(b) If 3 or more offenders were involved, more than 1 offender may be determined to have been a leader.

Defendant argues that McCord referred to both defendant and Martin as equal actors on the Facetime call and when defendant and Martin drove up to Alaniz's residence. Defendant further argues that McCord testified that Martin fired first and fired using the AK-47.

Alaniz, however, testified that he and defendant had been arguing throughout the day and that they planned to meet at Alaniz's residence to fistfight. Alaniz testified that, after defendant arrived at his residence, defendant propped himself on his car door to rest his rifle on the roof of his car and rapidly fired at Alaniz and the entire vicinity around Alaniz. Although McCord testified that Martin had fired the rifle, Squier, who was in the vehicle with defendant, testified that defendant grabbed the rifle from the front seat and began shooting toward Alaniz's residence. Squier also witnessed defendant arguing on the phone with Alaniz and heard defendant tell Alaniz that he was headed to Alaniz's house to fight. In light of this testimony, there was sufficient evidence to support a finding that defendant was the leader in this multiple-offender situation.

Defendant's claim of ineffective assistance of counsel on this ground cannot succeed because there is no reasonable probability that an objection to the scoring of OV 13 and OV 14 would have made a difference in the outcome. See *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015) ("[C]ounsel is not ineffective for failing to raise meritless or futile objections.").

## B. STANDARD 4 BRIEF INEFFECTIVE ASSISTANCE CLAIMS

### 1. ALANIZ'S MEDICAL INFORMATION

In a Standard 4 brief, defendant makes several more claims of ineffective assistance of counsel. Defendant first argues that he was denied the effective assistance of counsel by his trial counsel's refusal to call Alaniz's treating physicians or admit Alaniz medical records.

An attorney's decision to retain an expert witness is a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). A defendant must meet a heavy burden to overcome the presumption that defense counsel employed an effective trial strategy. *Id.*

Defendant argues that the prosecution continually emphasized Alaniz's injuries and asserted the Alaniz had been shot four times throughout the trial. In his brief on appeal, defendant offers a few pages from Alaniz's medical records to support his argument that introduction of Alaniz's medical records and testimony from his treating physicians would have assisted the jury in understanding that Alaniz's injuries were not life-threatening and that defendant only actually hit Alaniz with a bullet one time. Defendant asserts that if the jury better understood Alaniz's injuries, it would have been in a better position to decide whether defendant had the intent necessary to convict defendant of assault with intent to commit murder.

On the third day of trial, defendant informed the trial court that he wanted defense counsel to call two lay witnesses and Alaniz's treating physicians. Defense counsel stated that he did not believe that the physicians' testimony was relevant or necessary and informed the trial court that he and defendant disagreed about the relevance of the proposed testimony. Defendant argued that the injuries were a major issue in the case and the physicians' testimony would resolve any inconsistencies in Alaniz's testimony. Defendant thought that the physicians' testimony would assist the jury in understanding Alaniz's injuries and the evidence. The prosecution informed the trial court that it had given Alaniz's medical records to defense counsel and would stipulate to the admission of the records. Defense counsel did not have an objection to the admission of the medical records, but did not believe that the physicians would offer relevant testimony. The trial court cautioned defendant that if the medical records were admitted, any statements that Alaniz made to the medical staff would also be admitted. The trial court did not know whether the admission of the records would be helpful, but said that it was a decision for defendant and defense counsel to make. The medical records were not admitted into evidence.

The elements of assault with intent to commit murder are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *Anderson*, 322 Mich App at 632 (quotation marks and citation omitted). Actual injury is not required for the elements of this crime to be established. *Stevens*, 306 Mich App at 629. "A gun is a deadly weapon and firing a deadly weapon at another person—once or several times—undoubtedly involves the use of deadly force, because it is an act for which the natural, probable, and foreseeable consequence is death." *Id*. (quotation marks and citation omitted).

Defendant admitted to intentionally shooting at Alaniz in quick bursts of gunshots. Defendant also admitted that he continued shooting at Alaniz after Alaniz hid behind a vehicle in the driveway. Defendant testified that he continued shooting at Alaniz until defendant left the scene. The jury could have inferred defendant's intent from defendant's firing of his weapon at least 15, but likely 19, times at Alaniz. Moreover, the prosecution was not required to prove that Alaniz had an injury in order to prove the elements of the crime. The prosecution presented sufficient evidence from which a jury could have concluded that defendant acted with the intent to kill.

In light of the evidence admitted at trial, defendant has failed to overcome the presumption that trial counsel's decision not to admit Alaniz's medical records or call his treating physicians to testify was proper trial strategy. Instead, defendant offers mere speculation that the physicians' testimony would have been favorable to him regarding Alaniz's "non-life-threatening injuries," which he bases on his layman's interpretation of Alaniz's medical records. Defendant fails to explain how the physicians' testimony that Alaniz did not suffer life-threatening injuries would have affected the jury's decision regarding defendant's intent.[4] Furthermore, defendant fails to

---

[4] We also note that the medical records attached to defendant's Standard 4 brief actually contradict his argument – they state that Alaniz suffered multiple gunshot wounds and that he had bullet fragments in multiple places in his body. But even if Alaniz had not been struck by one of defendant's volley of bullets, a reasonable juror could conclude that defendant's "intent to kill"

show that the admission of this evidence would have resulted in a different outcome. See *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). Thus, defendant has failed to establish this claim of ineffective assistance of counsel.

## 2. STIPULATIONS REGARDING VEHICLES

Defendant next argues that trial counsel was ineffective by stipulating to the amount of damages to, and ownership of, the vehicles for the malicious destruction of property charges. We disagree.

Conceding certain elements of a charge at trial is a matter of trial strategy. *People v Chapo*, 283 Mich App 360, 369-370; 770 NW2d 68 (2009). A defendant must meet a heavy burden to overcome the presumption that defense counsel employed an effective trial strategy. *Payne*, 285 Mich App at 190.

Before trial began, defense counsel and the prosecution stipulated to the estimates of the damage to the vehicles and to the ownership of each vehicle. The estimates of the damages provided the basis of the three malicious destruction of property charges. There is nothing on the record to establish that defendant has a valid argument that the damages were inflated or incorrect. It was clear from the record that defense counsel did not stipulate to defendant's guilt of the offenses.[5] In addition, defense counsel moved for a directed verdict on the malicious destruction of property charges, arguing that defendant did not have the intent required to justify a guilty verdict on those charges. In addition, there is nothing in the record from which this Court could conclude that defendant was prejudiced by defense counsel's stipulation to the damages. Accordingly, defendant has failed to overcome the presumption that defense counsel employed an effective trial strategy by stipulating to the damages and ownership of the vehicles.

## 3. EVIDENCE TO SUPPORT SELF-DEFENSE THEORY

Defendant argues that defense counsel failed to adequately support defendant's self-defense claim and contends that if counsel had entered into evidence text messages between Martin and Alaniz, the jury would have found that defendant acted in self-defense. We disagree.

Because this Court's review of this issue is limited to errors apparent on the record, this Court cannot review the text messages that defendant attached to his brief when considering this claim. See *Abcumby-Blair*, 335 Mich App at 227. Even if the text messages established that Martin and Alaniz conspired to convince defendant to go to Alaniz's residence, defendant testified

---

was established beyond a reasonable doubt because defendant shot at Alaniz 15 to 19 times with an AK-47.

[5] The elements of malicious destruction of property over $1,000 to $20,000 are that the property belonged to someone else, the defendant destroyed or damaged the property, the defendant committed the act willfully and maliciously, and with the intent to destroy or damage the property, and the extent of the damage was over $1,000 and less than $20,000. MCL 750.377a(1)(b)(*i*); see also *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999).

that he agreed to go to Alaniz's house to fight. Squier witnessed defendant and Alaniz arguing on the phone and heard defendant tell Alaniz that he was on his way to Alaniz's house to fight. Alaniz testified that, without any exchange of words, defendant began shooting at Alaniz as soon as Alaniz exited his house. There was no evidence that Alaniz or anyone who was in his house that evening carried a gun with them when they exited the house. The evidence found at the scene established that defendant and Martin were the only shooters. Because defendant has failed to establish the factual predicate for his claim, he cannot establish that his trial counsel was deficient or that the outcome of the trial would have been different if the text messages had been entered into evidence. See *Carbin*, 463 Mich at 600 (placing burden of establishing factual predicate for claim on the defendant).

### 4. PLEA NEGOTIATIONS

Defendant next argues trial counsel's performance was objectively deficient during the plea negotiations. Defendant contends that trial counsel did not properly inform defendant of the trial strategy and defense tactics that trial counsel intended to pursue at trial. Defendant claims if he had been properly informed, he would have accepted the plea offer. This claim fails.

In order to establish ineffective assistance of counsel, a defendant must demonstrate "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *Randolph*, 502 Mich at 9. In the context of a rejected plea agreement, "a defendant must show the outcome of the plea process would have been different with competent advice." *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020) (quotation marks and citation omitted). To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Randolph*, 502 Mich at 9 (quotation marks and citation omitted). "Defendants are entitled to the effective assistance of counsel when considering or negotiating a plea agreement." *White*, 331 Mich App at 148. Defense counsel must advise a defendant regarding the nature of the charges, the consequences of a guilty plea, and the available defenses for each charge. *Id*. (citation omitted). In addition, a trial strategy is not ineffective because it was not successful. *Id*. at 149. Nor is it ineffective because it entailed taking risks, "especially if the range of available options for the defense is meager." *Id*.

At an adjourned pretrial on May 19, 2022, defense counsel at that time stated that he, the prosecution, and the trial court met in a status conference at which time the trial court agreed to a *Killebrew*[6] sentence of 11 years plus two years on the amended charges. The prosecution explained that the amended charges were two counts of assault with intent to commit murder and two counts of felony-firearm, and the prosecution would dismiss the remaining charges. Defendant stated that he tried to consider the offer, but he needed more time. The prosecutor informed the trial court that the plea offer was the same one that the prosecution had discussed with defendant's prior counsel in December and that the prosecution was not inclined to extend the deadline for defendant to accept beyond that date. The prosecution thought that defendant had ample time and two

---

[6] *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982).

attorneys with whom to discuss the offer. After a break, defense counsel informed the trial court that defendant declined the offer.

At an adjourned pretrial hearing for defendant, defendant's attorney at the time reminded the trial court that the prosecution's plea offer was still available. Defense counsel explained that she had met with defendant and his family to explain that the offer was generous, but defendant declined to accept it.

At a final pretrial hearing, the prosecution again placed the plea agreement it had been offering for over a year on the record. The prosecution further stated that the trial court had indicated that it would not accept a plea agreement on the day of trial. Defendant stated that he understood the offer and declined it.

It is clear from the record that defendant was fully informed of the charges and the sentence agreement. However, defendant argues that defense counsel did not properly inform him of the trial strategy trial counsel intended to pursue at trial and, if he had been properly informed, he would have accepted the prosecution's offer. Yet defendant does not elaborate on the trial strategy that trial counsel intended to pursue as opposed to the strategy the trial counsel actually pursued. An appellant may not merely announce his position and leave it to us to discover and rationalize the basis for his claims. *People v DeRousse*, 341 Mich App 447, 466 n 10; 991 NW2d 596 (2022) (citation omitted). Defendant has failed to establish the factual predicate for his ineffective assistance of counsel claim as to the plea negotiations. See *Carbin*, 463 Mich at 600.

## III. STANDARD 4 BRIEF DUE PROCESS CLAIM

Defendant argues in his Standard 4 brief that the prosecution knowingly elicited false testimony from Alaniz regarding the initial dispute between defendant and Alaniz that ultimately led to the confrontation at Alaniz's residence. We disagree.

A violation of due process presents a question of constitutional law, which this Court reviews de novo. *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015). However, a party must raise a constitutional issue before the trial court to preserve it for appeal. *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021). Because defendant did not raise this issue in the trial court, we will review the unpreserved constitutional issue for plain error affecting his substantial rights. *Id*. at 564. "An error is plain if it is clear or obvious, and it affects substantial rights if it affected the outcome of the lower court proceedings." *Id*. "[R]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Davis*, 509 Mich 52, 67-68; 983 NW2d 325 (2022) (quotation marks and citation omitted).

It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment. If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. Stated differently, a conviction will be reversed and a new trial will be ordered, but only if the tainted

-12-

evidence is material to the defendant's guilt or punishment. Thus, it is the misconduct's effect on the trial, not the blameworthiness of the prosecutor, which is the crucial inquiry for due process purposes. The entire focus of our analysis must be on the fairness of the trial, not on the prosecutor's or the court's culpability. [*People v Bass*, 317 Mich App 241, 272-273; 893 NW2d 140 (2016) (quotation marks and citation omitted).]

Defendant cites to pages 170-171 of the May 30, 2023 trial transcript for the assertion that Alaniz falsely testified that defendant was angry that defendant was dating his ex-girlfriend, which was argued by the prosecution to be evidence of motive. Defendant contends that he and Alaniz were actually arguing because Alaniz was upset that Delcher was still talking to defendant. While it is true that the prosecution argued that defendant's actions were motivated by the fact that Alaniz was dating his ex-girlfriend, the testimony of Alaniz was not inconsistent with the testimony of defendant, which was that they were arguing about Delcher. Specifically, Alaniz was asked whether defendant ever said anything to him about the fact that Delcher was pregnant. Alaniz said he could not recall exactly what was said, "but, yeah, we had bickered back and forth . . . about the situation." The prosecutor then asked "[a]ll right, so there was some argument about that as well," to which Alaniz answered in the affirmative. Although defendant testified that he did not care that Alaniz was dating Delcher, he admitted the two were arguing about Delcher. Thus, there is no basis for defendant's assertion that Alaniz testified falsely. However, even if the testimony of Alaniz could be interpreted in the manner defendant alleges, the prosecution does not have to disbelieve its own witness when testimony from another witness contradicts the prosecution's witness. *People v Lester*, 232 Mich App 262, 278; 591 NW2d 267 (1998), overruled in part on other grounds by *People v Chenault*, 495 Mich 142, 146 (2014). Moreover, defendant has failed to provide any evidence that the prosecution believed that Alaniz's testimony was false.

Defendant argues that text messages between Alaniz and Martin prove that Alaniz falsely testified. However, those text messages are not part of the record. This Court's review is generally limited to the record of the trial court and we will not allow any enlargement of the record on appeal. *People v Warren*, 228 Mich App 336, 356; 578 NW2d 692 (1998), rev'd in part on other grounds 462 Mich 415 (2000). Furthermore, because the text messages were not part of the record, the text messages were not authenticated as genuine messages between Alaniz and Martin.

Moreover, the reason that Alaniz and defendant were arguing does not change the evidence that defendant went to Alaniz's residence with a loaded AK-47 and began shooting at Alaniz. It also does not change the evidence that defendant and Martin, who arrived with defendant, were the only shooters. Because defendant has failed to prove that the prosecution knew that Alaniz's testimony regarding the root of the original argument between defendant and Alaniz was false, reversal is not required. See *People v Herndon*, 246 Mich 371, 417-418; 633 NW2d 376 (2001).

IV. RESENTENCING

Defendant argues that he is entitled to resentencing because, while his sentence was within the guidelines, there were rare and unusual circumstances that rendered defendant's presumptively proportionate sentence disproportionate. We disagree.

-13-

We review a trial court's sentencing decisions for an abuse of discretion. *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). "It is the trial court's duty to exercise discretion in a way that ensures the individualized sentence conforms with the principle of proportionality." *Id.* at 183. A trial court abuses its discretion when its decision violates the principle of proportionality. *People v Dixon-Bey*, 321 Mich App 490, 520-521; 909 NW2d 458 (2017) (citation omitted).

The trial court has the authority to sentence defendant within the range authorized by the Legislature. *Boykin*, 510 Mich at 183. However, the sentence imposed should be proportionate and "tailored to the particular circumstances of the case and offender." *Id.*; see also *Dixon-Bey*, 321 Mich at 520-521. "When a defendant's minimum sentence is within the guidelines range, this Court applies a nonbinding rebuttable presumption of proportionality." *People v Klungle*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket Nos. 364125 and 367795); slip op at 5 (quotation marks and citation omitted). "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (quotation marks and citation omitted).

Defendant argues that the unusual circumstances in this case were laid out in text messages between Alaniz and Martin. Defendant asserts that these text messages show that Alaniz wanted to fight defendant and that he and Martin agreed to lure defendant to Alaniz's residence. As discussed, these text messages are not part of the lower court record, and as a result, this Court will not review them.

Defendant has not presented or argued unusual circumstance as much as he disagrees with the facts as presented to the jury. Defendant claims that he was set up by Alaniz and Martin. However, the evidence presented also established that defendant agreed to fistfight Alaniz and drove to Alaniz's residence. Instead, defendant shot his AK-47 at least 15 times at Alaniz, hitting vehicles in the driveway, hitting the residence, and killing one of Alaniz's dogs that was in the house. Alaniz testified that defendant began shooting as Alaniz walked out of the house, without any conversation. Considering this evidence, defendant's sentence was within the sentencing guidelines and proportionate to the seriousness of the matter. Thus, defendant failed to overcome the presumption that his within-guidelines sentence was proportionate to the seriousness of the crimes.

## V. STANDARD 4 BRIEF SPEEDY TRIAL VIOLATION CLAIM

Lastly, defendant argues in his Standard 4 brief that he was deprived of his constitutional and statutory rights to a speedy trial. We disagree.

Whether a defendant was denied his constitutional right to a speedy trial is a mixed question of fact and law. *People v Gilmore*, 222 Mich App 442, 459; 564 NW2d 158 (1997). This Court reviews a trial court's factual findings for clear error. *Id.* A finding is clearly erroneous when "the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008) (quotation marks and citation omitted). This Court also reviews constitutional questions of law de novo. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009).

-14-

This Court reviews a trial court's decision on a motion to quash the information for an abuse of discretion. *People v Miller*, 288 Mich App 207, 209; 795 NW2d 156 (2010). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Hawkins*, 340 Mich App 155, 173; 985 NW2d 853 (2022) (quotation marks and citation omitted).

Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20. In Michigan, courts enforce this right through statute and court rule. MCL 768.1; MCR 6.004(A); *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). To determine whether a defendant has been denied the right to a speedy trial, a court balances the four *Barker*[7] factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Williams*, 475 Mich at 261-262. "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Id*. at 262. If an 18-month delay exists, a court must inquire into the other *Barker* factors in light of the parties' competing interests to determine whether a defendant has been deprived of his right to a speedy trial. *Id*.

Michigan courts measure the length of the delay from the date of the defendant's arrest to the trial date. *Id*. Defendant was arrested on March 18, 2020, and the trial began on May 30, 2023. The delay between defendant's arrest and the beginning of trial was 38 months, which was presumptively prejudicial. See *id*. Because the delay was presumptively prejudicial, this Court must consider the reason for the delay. *Id*. Upon examination of the reason for the delay, this Court examines whether each period of the delay is attributable to the defendant or the prosecution. *People v Waclawski*, 286 Mich App 634, 666; 780 NW2d 321 (2009).

On March 10, 2020, the Governor declared a state of emergency related to COVID-19. *Carter v DTN Mgt Co*, 345 Mich App 378, 380; 5 NW3d 372 (2023). On the day that defendant was arrested, the Michigan Supreme Court issued Administrative Order 2020-2 instructing trial courts to adjourn all criminal matters, including jury trials, until after April 3, 2020. *People v Witkoski*, 341 Mich App 54, 57; 988 NW2d 790 (2022). In the Oakland Circuit Court, all jury trials were adjourned until on or after February 28, 2022, when the court resumed full operations.[8] In *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 1, this Court held that delays caused by the COVID-19 pandemic are not attributable to the prosecution for purposes of a speedy trial. At trial, defense counsel acknowledged that the trial court's trial schedule was shut down through February 2022. Thus, the 23-month delay from March 18, 2020 through February 28, 2022, was attributable to COVID-19 because of mandated courtroom closures and was not attributable to the prosecution.

---

[7] *Barker v Wingo*, 407 U S 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972).

[8] See Oakland Circuit Court, *Covid-19 State of Emergency Jury Trial Pause*, <https://www.oakgov.com/home/showpublisheddocument/3872/638047902286200000 (accessed April 29, 2025).

Defendant had a trial scheduled for March 1, 2022, immediately after Oakland Circuit Court resumed full operations. However, at a pretrial hearing on January 27, 2022, defendant voiced concerns that his newly appointed counsel did not have time to prepare for trial and asked counsel to request an adjournment to allow more time to prepare for trial. The trial court questioned defendant about the March 1, 2022 trial date, informing defendant that the trial court was prepared to try his case on that date. Defendant declined, stating that he needed more time with his newly appointed attorney to prepare for trial. The trial court set defendant's trial for May 9, 2022, then the trial court adjourned trial, on its own initiative, to June 2022. The period from March 1, 2022 to May 9, 2022 was attributable to defendant. On May 19, 2022, the trial court allowed another attorney to withdraw because there had been a breakdown in the attorney-client relationship, and a new trial date was set for September 12, 2022. Thus, the period from May 19, 2022 to September 12, 2022 was attributable to defendant.

The September 12, 2022 trial date was adjourned until December 9, 2022, because Martin asked for a competency evaluation. On appeal, the prosecution accepts responsibility for this delay, but argues that it should be given a neutral tint. On December 15, 2022, the trial court allowed another of defendant's attorneys to withdraw because of a breakdown in the relationship. Therefore, defendant was responsible for the delay between December 15, 2022 until the trial date on May 30, 2023.

After the trial court resumed normal operations, much of the delay until trial was attributable to defendant. Except for the approximately four-month delay from September 12, 2022 to January 17, 2023, all other delays in the 15 months after the trial court resumed operations to the trial date were attributable to defendant. Because defendant caused most of the delay in the 15 months following the COVID-19 restrictions, this factor favors the prosecution.

The next factor to consider is defendant's assertion of the right to a speedy trial. Defendant complained to the trial court in May 2022 that his attorney refused to file a motion for a speedy trial. In June 2022, a person not authorized to practice law filed a motion on defendant's behalf for a speedy trial, which the trial court pulled from the file because it had been improperly filed. In December 2022, the trial court entertained defendant's motion for a speedy trial and denied it. Although defendant did not file a formal, properly filed motion, the trial court was aware of defendant's concerns and heard defendant's arguments. This factor favors defendant.

The fourth factor concerns the prejudice to defendant of the delay. "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264 (quotation marks and citation omitted). Defendant argues that he was personally prejudiced by the pretrial incarceration of 38 months and because he suffered anxiety and concern as evidenced by his repeated attempts to have his attorneys file a speedy trial motion. While the courts have recognized that pretrial incarceration and the anxiety caused by a lengthy delay constitute "considerable personal deprivation," *id*., pretrial incarceration and anxiety are insufficient to establish a violation of defendant's right to a speedy trial, *Gilmore*, 222 Mich App at 462. The most serious concern regarding prejudice to the defendant is the defendant's inability to adequately prepare for and defend his case. *Williams*, 475 Mich at 264.

Defendant argues that several witnesses—Alaniz, McCord, Squire, and Alaniz's mother—referred to the three-year delay as causing their memories to fade as to certain details. However,

defendant does not explain or assert how key details that these witnesses may have forgotten prejudiced his ability to defend the case. See *Gilmore*, 222 Mich App at 462. The testimony among all of the witnesses was that Alaniz and defendant had been arguing for a period of time and were arguing on the night of the shooting. Defendant's testimony was consistent with this testimony. The record does not provide specific proof that defendant was prejudiced by the delay.

Defendant also contends that he lost touch with two witnesses that he wanted to call and his counsel was unable to contact them because of disconnected phone numbers. However, defendant does not detail the testimony that these two witnesses could have provided or how their testimony would have impacted his case. Defendant has failed to demonstrate that the delay prejudiced his ability to defend his case. Defendant's right to a speedy trial was not violated and the trial court did not abuse its discretion by denying defendant's motion to quash the charges.

Affirmed.


/s/ Randy J. Wallace
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett